Lipscomb, J.
We propose, first, to inquire whether the title of Perez to the land has been made out; and, secondly, whether such right has been so forfeited as to reannex the land granted to the rest of the public domain, and make it subject to be located on by the certificate on which the plaintiff’s right accrued.
Tlie first point rests more on the facts than on any fixed rules of law. It rests on a presumption arising from long use and occupation of the land, coupled with the claim of ownership. The facts admitted by the record prove that the defendant had possession of the land in controversy, by actual use, occupation, and cultivation, from the year A. D. 1800 until A. D. 1836; but it is not admitted by the appellant that this use and occupation was coupled with the claim of an absolute right of property therein ; and the appellant contends'that the assertion of ownership of the property was not proven, and that the evidence repudiates such claim. There cau be no doubt that if it is in proof that there was no claim of perfect title set up, under which the defendant occupied, used, and cultivated the land, neither directly nor iufercutially, or that such claim was repudiated by the proof, no presumption of a grant, valid m Law, can be raised. It may, however, be said that the claim of ownership would be an inference fairly to be deduced or inferred from the use, occupation, and cultivation admitted by the plaint iff", unless a disclaimer, or something else repugnant to such claim, is proven. This is but a rational conclusion, that every one would draw from such acts of ownership. The appellants, however, contend that-this disclaimer is to be found in the extracts from the proceedings of the ayuntamiento, and that it is shown that the claim only amounted to a permission to occupy and enjoy the use. I am not certain that Ihc term (amparo) used can be well defined from the fragments only of the proceedings of tlm ayuntamiento — whether it is intended to refer to the title of Perez, .and designate the legal character of his title and the amount of his interest therein, or that an amparo, or protection, had been sought and granted until the applicant could have time to procure authentic evidence of his lost titles or have his titles revalidated. The extract from the will of the defendant’s father, the plaintiff's own evidence, shows that the testator was not in the possession of his title, but that he supposed it to be among the archives of the Government. And Domingo Bastillo, whose testimony was not objected to, swore that ‘’lie was present at the division of the property among the heirs of defendant’s father; the laud in contro *172 versy was treated as part of the. property of the succession ; the deeds to this property and some other were not present, and were said to Ire in Monclova.” If, under tlie supposition that the title, was lost, or, at any rate, out of liis possession, lie asked for a protection until it. could be recovered or the evidence supplied, such request ought not to prejudice liis title as an acknowledgment that lie did not hold by a valid and perfect grant. At most, it was a circumstance to which the jliry or the judge, on tile waiving of a jury trial, would give as much weight as lie might think it entitled to;' and it was to be taken and considered in connection with other circumstances disclosed by the testimony. The evidence of Jose Casiano goes to establish that tlie defendant claimed the land. And Domingo Bastillo testifies, “that tlie defendant and liis father always claimed tlie land in controversy as their properly, and that it was always respected as such by the Governments of Spain and Mexico; that he knew tlie father of the defendant obtained this grant of laud from Hie old Spanish Government, and thinks that it was granted by Neniencio Salcedo; had never seen tlie grant. Tlie rancho and the lands in controversy were always publicly reported to be the property of J. Perez, under a title made by Salcedo.” If these circumstances, taken together with tlie long use, occupation, and cultivation, and tlie erection of a stone house, removes tlie impression which, if standing alone, would have arisen from the asking for an amparo, in the opinion of tlie court below, it could not be said to be a conclusion unreasonable and ■unsupported by evidence.
The appellant’s counsel have argne.d that, the extract from the will of tlie elder Perez, introduced by tlie appellant, presents on its face evidence of fraud in this, that it assumes that Salcedo had issued the grant, and it calls him tlie commandant general of tlie Western Provinces, when it should have been issued by the commandant general of tlie Eastern Provinces. That this was manifestly a mistake, either in the draftsman of the will or in transcribing it, there cannot be the smallest doubt. If a fraud had been intended, the perpetrator would not have made so useless and so clumsy a mistake, when, in truth, it would have served liis purposes bettor by designating him as, what lie was proven to be, the general of the Eastern Provinces. Nor is it at all probable that a fraud so little likely to be successful would have been attempted by a dying man in making liis will.
The doctrine of presumption of a non-existing grant was very elaborately discussed by ns in the opinion of tlie court a few days ago, in the case of Lewis et al. v. The Corporation of San Antonio, and since, in tlie case of Herndon v. Casiano. It would, therefore, be wholly useless to travel over the same ground again. We are fully satisfied that the record in this case fairly presents tlie question for a jury tó determine whether they would presume a valid grant to sustain tlie defendant’s rights. A jury having been waived by the parties, tlie judge was substituted in (heir place to discharge the same --tuty, and we are of tlie opinion that the circumstances fully justified and supported the presumption of such a grant. And this brings us to tlie second point to be examined.
It has been argued that, admitting tlie defendant’s title to have been good and perfect, it had been forfeited by leaving the State and going west of the Río Grande, in December, 1836. This forfeiture is supposed to have accrued under the following provision of the Constitution of the Republic, tjiat is (o say: “All persons who shall leave tlie country for the purpose of evading a participation in the present struggle, or shall refuse to participate in it, or shall give aid or assistance to tlie present enemy, shall forfeit all rights of citizenship and such lands as they may hold in tlie Republic.” (8 sec., Gen. Pro., Dig., p. 37.) That to work the forfeiture denounced by tlie provision of the Constitution, (lie purpose or motive of the defendant in leaving- liis home in December, 1838, and going beyond the Rio Grande is a most material fact, cannot be doubted; and that the record should §how that it had been put in issue, will admit of as little doubt. The plaintiff in liis petition sets out *173 his title under his patent, and alleges that the defendant has trespassed upon his land to his damage, for which lie prays judgment; and there is no averment of a forfeiture by the defendant of his rights by subjecting himself to the penalty imposed by the Constitution for the acts therein specified. The answer of the defendant denies the right of the plaintiff, and then sets up his own superior title; and he alleges that the plaintiff had illegally and fraudulently obtained a patent for the land; and then alleges that it has thrown a cloud on his title, and may be used to harass and oppress him by subjecting him to expensive litigation; prays that the patent of tire plaintiff may be delivered up to be canceled, annulled, and vacated, &c. The greater and most material part of this answer is in the nature of a cross-bill, in which the defendant becomes the actor; and if the plaintiff' relied upon the supposed forfeiture, and believed that he had a right to avail himself of it iu this action, he should have set up the fact or facts constituting the forfeiture in his answer to this cross-bill or petition of the defendant; or he could, on motion to the court, have amended his petition by inserting the allegation of the forfeiture. The principle that the allegata must be broad enough to admit all the necessary proof, and that every material fact must be alleged, lias been ofteu declared by this court; first solemnly adjudicated in Mims v. Mitchell, (1 Tex. R., 443,) and sustained by au unbroken train of decisions from that time clown to the present. (See Coles v. Kelsey, 2 Tex. R., 541; Caldwell v. Haley, 3 Id., 317.) And if there was proof without such allegata, it should be disregarded. (State v. Thorn, 3 Tex. R. 499; Wright v. Wright, Id., 168; Carter & Hunt v. Wallace, 2 Id., 206.) We believe that it is clear, from the pleading iu this ease, that the question of forfeiture was not presented for the consideration of the jury, and no issue presented to have made it available to the plaintiff. But if it were admitted that the consequence of the forfeiture could have been available to the plaintiff by proof of the facts constituting such forfeiture, under the petition and answer iu this ease, it would still be an issue of fact to he decided by the jury, and not of law to be adjudged by the court. The evidence was far from being clear and satisfactory to prove that the removal of the defendant was from the motive of avoiding a participation in the struggle then going on, or a refusal to participate in it; and, consequently, liad there been a verdict in the case negativing such charge, according to the uniform decisions of this court, wo would not have felt authorized to have disturbed such verdict. The reason of the rule is not effected by the submission of the facts, by consent, to the decision of the judge and waiving a jury; (he same reason would prevail, that those whose duty it is' to pass on the testimony, where it is given, have superior advantages, in deciding on its conclusiveness, over a revising tribunal, where it can only he known as forma spread upon the record, without any of the attending circumstances of manner and appearance of the witnesses. Oil this principie it has always been ruled by a revising tribunal, that unless the verdict is unsupported by evidence or manifestly against evidence, it will not be disturbed.
So far, the question of forfeiture lias been discussed upon the hypothesis that a locator on lands supposed to be forfeited could avail himself of sncli forfeiture, bjr showing the facts that constituted it, on the trial of the right acquired by such location ; and in this case I do not propose to inquire whether, in general, this could or could not be done. It may, however, not be improper to remark that if, as a general rule, this could he done, yet it is believed that this case would he an exception. The 7th section of an act of the Congress of Texas, approved June 9th, 1837, authorizing the issuing the promissory notes of tlie Government, enacts, “that all improved forfeited lands are hereby pledged for the redemption of these promissory notes of the Government; and, iu addition, the faith and credit of the Government are hereby solemnly pledged.” It is certain that the promissory notes of the Government were not redeemed at the date of the plaintiff’s location, in the summer of 1838. I am not aware that this act has been repealed, or that the pledge so given has ever been withdrawn; at any rate, it was not, at the time the plaintiff made *174 his location. There is evidence, full and conclusive, that the land in controversy was improved, and as such, if it was forfeited by the defendant, it was designated for another purpose by the State, which was such a setl ing- apart and appropriation by the State as to forbid its individual appropriation. We arc of the opinion that the judgment of the court below must be affirmed.
Note 63 —Lewis v. San Antonio, ante, 288.
Note 5d — As to pleadings in actions of trespass to try title, see Hunt v. Turner, 9 T., 385; Rivers v. Foote, 11 T., 662; Hollingsworth v. Holshousenj 17 T.. 41. *
Note 55. — Rivers v. Foote, 11T., 662.
Judgment affirmed.