RAMSEY et al. v. INVESTORS DIVERSI-
FIED SERVICES, Inc.

No. 10035.

Court of Civil Appeals of Texas.
Travis.

April 16, 1952.

Rehearing Denied May 7, 1952.

264

Price Daniel, Atty. Gen., C. K. Richards, Asst. Atty. Gen., for appellants.

McGown, McGown, Godfrey & Logan, Harry L. Logan, Jr., R. W. Decker, all of Fort Worth, by Harry L. Logan, Jr., for appellee.

GRAY, Justice.

Appellee sued the Secretary of State, the State Treasurer and the Attorney General, in their official capacities (herein referred to as the State) to recover $55,699.79 paid under protest, Article 7057b, Vernon's Ann. Civ.Stat. This amount had been assessed as additional franchise taxes due under Article 7084, Vernon's Ann.Civ.Stat., and which assessment was for the years 1943 through 1948, both inclusive.

The trial court awarded appellee a recovery of $55,177.86 and interest, and awarded the State a recovery of $521.93.

Appellee is a Minnesota corporation with its home office in Minneapolis. In 1941, it was issued a permit to do business in Texas, for the following purposes:

"* * * to accumulate and loan money; to sell and deal in notes, bonds and securities; to act as Trustee under any lawful express trust committed to it by contract, and as agent for the performance of any lawful act; to subscribe for, purchase, invest in, hold, own, assign, pledge and otherwise deal in and dispose of shares of capital stocks, bonds, mortgages, debentures, notes and other securities or obligations, contracts and evidences of indebtedness of foreign or domestic corporations not competing with each other in the same

line of business, to borrow money or issue debentures for carrying out any or all purposes above enumerated." Art. 1303b, Vernon's Ann.Civ.Stat.

Also, appellee complied with Article 696, Vernon's Ann.Civ.Stat., by depositing with the Secretary of State $100,000 in United States Treasury bonds, and with Article 1524a, Vernon's Ann.Civ.Stat., by making deposits of collateral securities with the Second National Bank of Houston, Texas, as Trustee.

Appellee filed annual franchise tax returns with the Secretary of State for the years 1943 through 1948, and paid the amount of money due as reflected by those returns. The amount of money so paid is not in issue here. In 1949, the Secretary of State issued and delivered to appellee a "State of Texas Delinquent Franchise Tax Notice" for the years 1943 through 1948, showing delinquent franchise taxes due for those years amounting to $55,699.79.

Appellee tendered to the Secretary of State amended franchise tax returns for each of the years involved which showed no business done in Texas for those years. The Secretary of State refused to accept or to file the amended returns and appellee then paid the amount of taxes alleged to be due and filed the following written protest to such payment:

"This payment is made under protest for the following reasons:

"(1) In computing the franchise tax alleged to be due, the State of Texas has erroneously included certificates and contracts of Investors Syndicate to the extent of their cash surrender value as 'outstanding bonds, notes and debentures'. Such method of computation is in error in that:

"(a) Such certificates and contracts are not in whole or in part 'outstanding bonds, notes and debentures' as such terms are used in Article 7086, Texas Revised Civil Statutes, and

"(b) Such certificates and contracts are not in whole or in part 'outstanding bonds, notes and debentures' or 'written evidence of indebtedness' which bear a maturity date of one year or

more from date of issue, nor have such certificates or contracts been renewed, extended or refinanced.

"(2) In computing the franchise tax so alleged to be due, the State of Texas has erroneously included interstate transactions as 'business done in Texas" in that:

"(a) All receipts from certificate and contract sales by Investors Syndicate, now Investors Diversified Services, Inc., during the periods in question were interstate transactions and were not 'business done in Texas' within the meaning of such phrase as used in Article 7084, Texas Revised Civil Statutes. Such certificate and contract sales are under the methods employed by the State of Texas in arriving at the amount of such alleged tax erroneously deemed 'business done in Texas'.

"(b) All mortgage loan transactions, involving mortgages on Texas assets, consummated by Investors Syndicate, now Investors Diversified Services, Inc., during the periods in question, were interstate transactions and were not 'business done in Texas' within the meaning of such phrase as used in Article 7084, Texas Revised Civil Statutes. In computing the tax so alleged to be due the State of Texas has erroneously included all such mortgage loan transactions as 'business done in Texas'.

"(c) Investors Syndicate, now Investors Diversified Services, Inc., did not engage in any intrastate business in Texas in any of the periods in question. In this connection in its original franchise tax returns for the periods here in question, Investors Syndicate erroneously included as 'business done in Texas' certain amounts as therein shown. All of such amounts consisted of certificate and contract sales and mortgage loan transactions, each of which in reality was an interstate transaction. Investors Syndicate has heretofore tendered to the Secretary of State amended franchise tax returns, correctly reflecting no 'business done in Texas' in any period here in question. The Secretary of State has refused to

accept or file said amended returns. Said amended returns are attached hereto as a part of this protest and are marked 'Exhibit A' for identification.

"(d) All transactions, which in computing the franchise tax alleged to be due, the State of Texas has considered as 'business done in Texas' were in fact interstate transactions.

"(e) The Secretary of State has erroneously refused to accept or file the above referenced amended franchise tax returns, which are attached hereto and marked 'Exhibit A' for identification."

The business done by appellee was: (1) the issuance and sale of "Installment Investment Certificates" to residents of the State of Texas, and (2) the making of loans on real estate located in Texas. The investment certificates were sold and issued in the following manner. Divisional managers and sales representatives of appellee (later referred to as agents) in Texas maintained their own offices at their own expense and were paid by commissions on sales. These agents solicited applications for the purchase of investment certificates, received such applications and collected the initial installment payment from Texas residents. The application and payment were forwarded by the agents to appellee at Minneapolis where the necessary book entries as to the certificate were set up and kept. Upon acceptance of the application, the certificate was issued and forwarded to the local agent for delivery to the purchaser. The holder of the certificate made current payments over a period of ten or fifteen years as provided for in the certificate. These payments could be made to either appellee's home office at Minneapolis or to the local agent and sent by him to the home office. The certificates provided that if the holder made the required payments for twelve, eighteen or twenty-four months (depending on the terms of the particular certificate) that thereafter he might elect not to make further payments with the option to: (1) within two years resume the required payments with a reinstatement of the certificate; (2) elect to receive a paid up certificate; or (3) elect to receive the cash value of the certificate. The certificates also provided for a maturity value, and further contained a provision similar to, or that:

"The Syndicate shall have the right at any time at its option to call in this Certificate and take it up by paying the registered owner hereof the full amount paid thereon together with 5½ per cent interest, compounded annually for the time the Syndicate has had the use of the money, less any indebtedness due the Syndicate."

As to the mortgage loans on Texas real estate, the local agents of appellee solicited applications for loans. Generally these applications were forwarded to appellee's home office for acceptance or refusal. Upon acceptance of the application, the borrower executed the necessary instruments and the amount of the loan was delivered to the borrower by the Texas agent. However, after March 1, 1946, the Texas agents were authorized to approve applications for certain specified loans.

In computing the amount of delinquent franchise taxes alleged to be owing by appellee, the Secretary of State added to appellee's taxable capital, as shown by its original franchise tax returns filed for the years involved, the cash surrender value of contracts and certificates to which appellee was a party.

In Clark v. Atlantic Pipe Line Co., Tex.Civ.App., 134 S.W.2d 322, 323, error ref., this Court said that the term "business done in Texas" as used in Article 7084, supra, means intrastate business. In that case the question was whether or not shipments of crude oil, some of which shipments originated in Texas, and some outside of Texas, but all of which were transported through appellee's pipe lines for ultimate delivery at points beyond the State, was interstate shipments though appellee's part of the carriage was performed entirely in Texas. The facts of that case are different from the facts before us and cannot be accurately applied as a test here. We do not suggest that the statute applies to business other than intrastate business, but that the character of the business done whether intrastate or interstate must be determined

from the facts of the particular case under investigation. 23 Am.Jur., Foreign Corporations, p. 333, Doing Business.

■ In 20 C.J.S., Corporations, § 1829, page 46, it is stated that: "The general rule is that, when ·a· foreign corporation transacts some substantial part of its ordinary business in a state, continuous in character, it is doing, transacting, carrying on, or engaging in business therein, within the meaning of the statutes under consideration." (Taxing Statutes rather than statutes making the corporation amenable to process.)

■ The conduct of appellee's business in Texas was by and through its authorized agents who negotiated the sale of investment certificates to Texas residents and solicited loans on Texas real estate. These were not casual, isolated or single transactions, but a continuous pursuit of the business appellee was authorized to do, and as a result thereof appellee has built up a substantial business in Texas as is shown by the record before us. The application for a loan and the application for the purchase of investment certificates with the first payment for such certificate were the initial steps of the transactions that resulted in the consummation of loans and sales to the borrowers and purchasers in Texas. We think such business was local in nature and in character and that appellee was doing business in Texas within the terms of the statute. Browning v. City of Waycross, 233 U.S. 16, 34 S.Ct. 578, 58 L.Ed. 828; United Artists Corp. v. Board of Censors, 189 Tenn. 397, 225 S.W.2d 550, certiorari denied, 339 U.S. 952, 70 S.Ct. 839, 94 L.Ed. 1365. See. annotations 105 A.L.R. 11 and 139 A.L.R. 950. Norton Company v. Department of Revenue of State of Illinois, 340 U.S. 534, 71 S.Ct. 377, 95 L.Ed. 517.

■ The provisions of Article 7084 applicable here are its provisions contained in the 1941 Amendment, Acts 47th Leg. p. 269. These provisions are:

"* * * every domestic and foreign corporation heretofore or hereafter chartered or authorized to do business in Texas, or doing business in Texas, shall, on or before May 1st of each year, pay in advance to the Secretary of State a franchise tax for the year following, based upon that proportion of the outstanding capital stock, surplus and undivided profits, plus the amount of outstanding bonds, notes and debentures, (outstanding bonds, notes, and debentures shall include all written evidences of indebtedness which bear a maturity date of one (1) year or more from date of issue, and all such instruments which bear a maturity date of less than one (1) year from date of issue but which represent indebtedness which has remained outstanding for a period of one (1) year or more from date of inception, but which have been renewed or extended, or refinanced by the issuance of other evidences of the indebtedness, whether to the same or other parties and it is further provided that this term shall not include instruments which have previously been classified as surplus) as the gross receipts from its business done in Texas bears to the total gross receipts of the corporation from its entire business, * * *."

Appellee lays stress on the provisions of the investment certificates giving it the option to call in such certificates—quoted supra. It says that by reason thereof the certificates are not written evidences of indebtedness within the meaning of the statute, that at most they are demand obligations due in less than one year and which have not been renewed, extended or refinanced. Appellants take the opposite view.

In any event the certificates were written evidences of indebtedness and constituted an obligation of appellee to pay a sum of money at some future time. As such they will, until paid, be outstanding obligations the maturity dates of which were fixed at more than one year from the date of issue contingent only on the exercise by appellee of its option to recall.

As we understand the record before us, appellee does not contend that taxes have been assessed against any certificate that has been recalled in less than one year from the date of issue, or, for that matter, that the option to recall has been exercised as to any certificates.

The option, by its own terms, does not change the maturity dates of the certificates. It is not self-executing but simply gives appellee a right to elect to call in the certificates. Only in the event that the option is exercised within one year from the date of issue of the certificates could they be matured at a time less than one year from the date of issue. If the option was not exercised within one year then the certificates would be within the terms of the statute. In any event the maturity date as written in the face of the certificate could be changed only if appellee exercised its option and if not so changed the certificates remained installment certificates maturing on the dates therein written. Collateral Liquidation, Inc., v. Renshaw, 301 Mich. 437, 3 N.W.2d 834, 140 A.L.R. 1386.

Even though the options, supra, granted to the holders of the certificates may have made the amounts to become due thereon contingent, yet, for the reasons stated, such contingency would not remove the certificates from the operation of the statute.

It is our opinion that the contingency that appellee may, at a future time more or less than one year after the date of issue, elect to call in the certificates does not make them demand obligations due in less than one year. Brown v. Maguire's Real Estate Agency, Mo.App., 101 S.W.2d 41, 49.

■ A substantial portion of the payments received by appellee from its sale of investment certificates were invested in mortgage loans on real estate in various localities throughout the United States. It is not disputed that some portion of such payments was invested in loans secured by Texas real estate, and we do not understand appellee to assert there is error in the Secretary of State's calculation of amounts. Because the mortgage loans were investments of appellee in Texas, secured by liens on Texas real estate, and were made in the continuous pursuit of appellee's business, we hold the same were properly included in calculating the taxes due by appellee on business done in Texas. Article 7084, supra; Houston Oil Co. v. Lawson, Tex.Civ.App., 175 S.W.2d 716, error ref.

■ Appellee's right to recover the sum of money sued for is limited to the grounds set out in its written protest of payment. We have determined those grounds adversely to appellee which renders unnecessary a consideration of the refusal of the Secretary of State to receive or to file the amended tax returns tendered by appellee and the action of the trial court in admitting such returns in evidence at the trial.

Appellee's cross-point to the effect that the trial court erred in allowing a recovery against it of $521.93 is disposed of by what we have already said.

That part of the judgment of the trial court awarding the State a recovery of $521.93 is affirmed, otherwise the judgment is reversed and judgment is here rendered against appellee for $55,177.86, which sum shall be transferred from the suspense account to the general fund of the State Treasury in satisfaction of the judgment (except costs) here rendered against appellee.

In part affirmed and in part reversed and rendered.