**John SHARP, Comptroller of Public Accounts of the State of Texas, Petitioner,**

v.

**HOUSE OF LLOYD, INC., Respondent.**

No. D–0450.

Supreme Court of Texas.

June 12, 1991.

Rehearing Overruled Oct. 16, 1991.

*See also* Ray & McKelvey, *The Mandamus Explosion,* 28 S.Tex.L.Rev. 413 (1987).

Harriet D. Burke, Dan Morales, Austin, for petitioner.

Randall Buck Wood, Austin, for respondent.

## OPINION

MAUZY, Justice.

The question presented in this case is whether the State Comptroller is barred from collecting the Texas Franchise Tax from House of Lloyd, Inc. because of an alleged long-standing construction of the franchise tax statute as not applying to corporations engaged in solicitation sales activities through independent contractors.

House of Lloyd, Inc., a Missouri corporation, sued the State Comptroller to recover certain franchise taxes paid under protest for the period September 5, 1983 through December 31, 1985. The corporation engages in solicitation sales activities in Texas by selling toys and gifts through independent contractors, who display catalogs to potential customers at sales parties, take orders for items in the catalogs, and send the orders to Missouri. After receiving shipments from Missouri, these contractors then deliver the goods to the Texas customers. During the tax periods at issue in this case, House of Lloyd had approximately $22 million in gross sales in Texas. House of Lloyd has never held, nor has it been required to obtain, a certificate of authority to do business in Texas. The trial court held that House of Lloyd was not liable for the tax, and the court of appeals affirmed. We reverse and render judgment for the state, and hold that the tax, as applied to House of Lloyd, is valid.

The Texas Franchise Tax, Tex.Tax Code § 171.001, is imposed on every domestic and foreign corporation chartered or authorized to do business within the state, or doing business within the state, and not specifically exempted by statute from the payment of such tax. The Secretary of State collected and administered the franchise tax from 1941 until the legislature transferred the responsibility to the Comptroller in 1959.

Prior to May 1, 1941, the franchise tax statute provided that only corporations chartered or authorized to do business in Texas were liable for the franchise tax. Act of March 27, 1930, 41st Leg., 5th C.S., ch. 68, 1930 Tex.Gen.Laws 220 (formerly Tex.Rev.Civ.Stat. art. 7084). Effective May 1, 1941, the statute was amended to provide that the tax was to be imposed, not only on every domestic and foreign corporation chartered or authorized to do business in Texas, but also on all corporations that were actually "doing business" in Texas. Act of April 28, 1941, 47th Leg., R.S., ch. 184, 1941 Tex.Gen.Laws 269 (formerly Tex.Tax—Gen. art. 12.01). On January 1, 1982, a nonsubstantive revision of the statute was made to provide for imposition of

the tax on "each corporation that does business in Texas." Tex.Tax Code § 171.001.

House of Lloyd does not argue that its solicitation sales activities do not establish a constitutional nexus with Texas sufficient to authorize franchise tax assessment. Instead, House of Lloyd contends that the Comptroller should be barred from collecting the tax, because of nonassessment prior to 1983 for a period of approximately forty-two years after the enactment of the statute which authorized imposition of the tax.

The parties stipulated at trial that there is no evidence that prior to 1983 the franchise tax requirement of "doing business" was ever interpreted by the Comptroller to impose a tax on foreign corporations which effected sales in Texas through independent contractors. The first indication of an affirmative agency construction of "doing business" was a rule promulgated by the Comptroller, effective December 31, 1975, which provided:

> A corporation is "transacting" or "doing" business in Texas when it is transacting some substantial part of its ordinary business in Texas. Each case must be decided on its own facts, with determination based on the totality of the corporation's activities within the State. The Texas Business Corporation Act art. 8.01, provides a non-exhaustive list of activities which do not constitute transacting business in the State. This ruling contains a non-exhaustive list of activities which constitute transacting or doing business in Texas.

34 Tex.Admin.Code § 3.406 (1975).

Section 8.01 of the Texas Business Corporation Act specifically provides that "transacting business" for purposes of obtaining a charter or authorization to do business in

Texas, does not encompass the activity of soliciting sales through independent contractors. Tex.Bus.Corp.Act § 8.01(B)(6).

The Comptroller amended the above-referenced rule, effective September 1983, to provide:

> A corporation is doing business in Texas, for purposes of Chapter 171 of the Texas Tax Code, when it is transacting some part of its ordinary business in Texas. 34 Tex.Admin.Code § 3.406(b) (1983).

The Comptroller imposed the tax on House of Lloyd subsequent to the 1983 rule change.[1]

■ Although neither the Secretary of State nor the Comptroller attempted to collect the tax prior to 1983, the only evidence of an affirmative administrative policy that such corporations were not subject to the tax is Comptroller Rule 3.406, in effect from 1975 until 1983, which inexplicably tied the definition of "doing business" for franchise tax purposes to the definition of "transacting business" in the Texas Business Corporation Act. The 1975 rule was in direct contravention to the evident purpose of the Legislature in enacting the 1941 amendment to the statute, which provided that not only those corporations authorized or chartered to do business in the state (pursuant to the Texas Business Corporation Act) were required to pay franchise tax, but also those corporations actually "doing business" in the state. The logical interpretation to be placed on the addition of the language "doing business" is that the Legislature was imposing the tax against foreign corporations which were conducting business activities in Texas, but did not have a certificate of authority or were not authorized to do business in Texas.[2] The Comptroller was without au-

---

1. Effective January 9, 1986, the Comptroller amended Rule 3.406 to provide:

   (b) A corporation is doing business in Texas for purposes of the Texas Tax Code, Chapter 171, when it has constitutional nexus with Texas for the purpose of franchise taxation.
   (c) Some specific activities which constitute doing business in Texas are:
   ....
     (4) solicitation. Having employees, independent contractors, agents, or other repre-

   sentatives in Texas, regardless of whether they reside in Texas, to promote or induce sales of the foreign corporation's goods or services. . . .
   34 Tex.Admin.Code § 3.406.
   However, since the amendment occurred subsequent to the imposition of taxes in this case, it is inapplicable here.

2. It is noted in the comments to § 2.01 of the Texas Business Corporation Act that the Texas Franchise Tax is broader because it applies to

thority to promulgate Rule 3.406, as enacted in 1975, since it was contrary to the plain language of the statute. *See Brown Express, Inc. v. Railroad Commission,* 415 S.W.2d 394, 397 (Tex.1967); *Eddins–Walcher Butane Co. v. Calvert,* 156 Tex. 587, 298 S.W.2d 93 (1957).

■ In support of its argument, House of Lloyd relies upon the language in *Humble Oil & Refining Co. v. Calvert,* 414 S.W.2d 172, 180 (Tex.1967), that "[a] statute of doubtful meaning that has been construed by the proper administrative officers, when re-enacted without any substantial change in verbiage, will ordinarily receive the same construction." This rule is only applicable where there has been an affirmative long-standing administrative policy. *See University of Texas at Austin v. Joki,* 735 S.W.2d 505, 509 (Tex.App.—Austin 1987, writ denied); *Guarantee Mutual Life Insurance Co. v. Harrison,* 358 S.W.2d 404, 408 (Tex.Civ.App.—Austin 1962, writ ref'd n.r.e.). A mere failure to enforce a statute, absent showing of an affirmative policy that the statute is construed by the agency to be inapplicable under the circumstances, does not establish an affirmative agency policy as to the agency's interpretation of the statute. There is no evidence of any affirmative administrative construction of this statute prior to 1975.

■ Even if the failure of the Comptroller to collect the tax could be construed as an affirmative construction that the statute is inapplicable to businesses such as House of Lloyd, the doctrine of legislative acceptance applies only when the statute to be construed is ambiguous or of doubtful meaning. Here, although the terms "doing business" and "business done in Texas" may have been ambiguous under the facts of this case prior to 1969, the statute was amended at that time to specify that "business done in Texas" includes the sales of tangible personal property when the property is delivered or shipped to a purchaser within this state.

■ The phrase "does business" is not defined in § 171.001, however, § 171.103 of the Tax Code sets forth activities which constitute "business done" in Texas for purposes of calculating the amount of franchise tax to be assessed against a corporation. In 1969, the legislature amended the statute, effective May 1, 1970, to provide:

The gross receipts of a corporation from its business done in this state is the sum of the corporation's receipts from:

(i) Sales of tangible personal property when the property is delivered or shipped to a purchaser within this State, regardless of the F.O.B. point or other condition of sale....

Act of September 9, 1969, 61st Leg., 2d C.S., ch. 1, 1969 Tex.Gen.Laws 61 (formerly Tex.Tax.—Gen. art. 12.02(1)(b)(i), now codified as Tex.Tax Code § 171.-103).[3]

---

those corporations to which the Texas Business Corporation Act would not apply. Tex.Bus. Corp.Act § 2.01 (comment).

**3.** In 1984, the legislature made a nonsubstantive revision to § 171.103. The statute currently provides:

The gross receipts of a corporation from its business done in this state is the sum of the corporation's receipts from:

(1) each sale of tangible personal property if the property is delivered or shipped to a buyer in this state regardless of the FOB point or another condition of sale....

Tex.Tax Code § 171.103.

Between September 1, 1959 and April 30, 1970, the statute provided:

For purposes of this Article, the term "gross receipts from its business" shall include:

(a) Sales of tangible personal property located within Texas at the time of the receipt of or appropriation to the orders where the shipment is made to points within the state. Act of August 6, 1959, 56th Leg., 3rd C.S., ch. 1, 1959 Tex.Gen.Laws 187 (formerly Tex. Tax—Gen. art. 12.02(a)).

Prior to September 1, 1959, the statute provided: [E]very domestic and foreign corporation heretofore or hereafter chartered or authorized to do business in Texas shall ... pay ... a franchise tax ... based upon that proportion of the outstanding capital stock, surplus and undivided profits, plus the amount of outstanding bonds, notes and debentures ... as the gross receipts from its business done in Texas bear to the total receipts of the corporation from its entire business. Act of June 7, 1955, 54th Leg., R.S., ch. 404, 1955 Tex.Gen.Laws 1080 (formerly Tex.Rev. Civ.Stat. art. 7084).

For purposes of calculation of the amount of the franchise tax, whether business is "business done" in Texas is determined, *inter alia,* by whether such property, when sold, is delivered or shipped to a purchaser within Texas. All of House of Lloyd's business transactions with Texas involve the delivery of goods to Texas purchasers. Section 171.103 clarifies the meaning of the statute as to the activities that constitute "doing business" for purposes of imposition of the franchise tax. In determining the meaning of a statute, a court must consider the entire act, its nature and object, and the consequences that would follow from each construction. *Sayre v. Mullins,* 681 S.W.2d 25 (Tex.1984). Interpretations of statutes which would produce absurd results are to be avoided. *McKinney v. Blankenship,* 154 Tex. 632, 282 S.W.2d 691, 698 (1955). Considering the act in its entirety, it is apparent that the Legislature sought to collect franchise tax from corporations that deliver or ship personal property to purchasers within Texas.[4] House of Lloyd has offered no plausible explanation of why the Legislature would require such sales to Texas purchasers to be counted to determine the percentage of a company's business done in Texas, if the legislature did not consider those acts to constitute business done in Texas for determining the initial applicability of the franchise tax. From September 5, 1983 to December 31, 1985, House of Lloyd had approximately $22 million in sales of goods that were delivered to purchasers in Texas. Since each sale would be considered "business done" in Texas under § 171.103, it would be illogical to conclude that a corporation that engages in such a large volume of these activities is not a corporation that "does business" in Texas. The Legislature made its intent clear with the 1969 amendment. No discretion was vested in the Comptroller to interpret the law in a manner inconsistent with the clear intent of the Legislature. *See Bullock v. Enserch Exploration, Inc.,* 614 S.W.2d 215, 218 (Tex. Civ.App.—Austin 1981, writ ref'd n.r.e.), *cert. denied,* 455 U.S. 946, 102 S.Ct. 1445, 71 L.Ed.2d 659 (1982).

We reverse the judgment of the court of appeals and render judgment in favor of the Comptroller.

---

4. During the 1989 regular session, through the enactment of Senate Bill 1481, the Texas Legislature made the following changes to § 101.002 and § 111.002 of the Texas Tax Code:

§ 101.002.

. . . .

(b) Except as otherwise provided by statute, the jurisdiction and authority of the state to determine the subjects and objects of taxation shall extend to the limits of the then-current interpretations of the Texas Constitution and United States Constitution and laws. Tex.Tax Code § 101.002(b).

§ 111.002.

(a) The comptroller may adopt rules that do not conflict with the laws of this state or the constitution of this state or the United States for the enforcement of the provisions of this title and the collection of taxes and other revenues under this title. In addition to the discretion to adopt, repeal, or amend such rules permitted under the constitution and laws of this state and under the common law, the Comptroller may adopt, repeal, or amend such rules to reflect changes in the power of this state to collect taxes and enforce the provisions of this title due to changes in the constitution or laws of the United States and judicial interpretations thereof. Tex.Tax Code § 111.002(a).

These changes were made by Sections 1 and 2 of Senate Bill 1481. Section 3 of Senate Bill 1481 provides that "[i]t is the intent of the Legislature that Sections 1 and 2 of this Act be considered as clarification of existing law and not a substantive change." Act of June 2, 1989, Ch. 231, § 3, 1989 Tex.Gen.Laws 1068. Although this provision was not in effect during the tax years at issue in this case, it should be considered in ascertaining the legislative intent of the provisions before this court. *See Stanford v. Butler,* 142 Tex. 692, 181 S.W.2d 269, 274 (1944); *Calvert v. Marathon Oil Co.,* 389 S.W.2d 153, 159 (Tex.Civ.App.—Austin 1965, writ ref'd n.r.e.). House of Lloyd does not contend that Texas could not, with a properly drafted statute, constitutionally tax the corporation.