**LAWRENCE INDUSTRIES, INC., Appellant,**

v.

**John SHARP, Comptroller of Public Accounts of the State of Texas; Martha Whitehead, Successor in Office to Kay Bailey Hutchison, Treasurer of the State of Texas; and Dan Morales, Attorney General of the State of Texas, Appellees.**

No. 3–94–007–CV.

Court of Appeals of Texas, Austin.

Dec. 21, 1994.

Rehearing Overruled Feb. 15, 1995.

Ray Langenberg, Scott, Douglass & Luton, Austin, for appellant.

Dan Morales, Atty. Gen., Ms. Christine Monzingo, Asst. Atty. Gen., Taxation Div., Austin, for appellees.

Before POWERS, JONES and KIDD, JJ.

JONES, Justice.

Appellant Lawrence Industries, Inc. ("Lawrence") brought a tax protest suit against the Comptroller and other statutory defendants, appellees, to recover assessed franchise taxes. Tex.Tax Code Ann. § 112.053 (West 1992) (hereinafter "Tax Code"). Following a nonjury trial, the trial court rendered judgment for the Comptroller. Lawrence appeals, asserting that it was

not doing business in Texas and did not have sufficient constitutional nexus with the state to subject it to franchise tax. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Lawrence is a holding company incorporated in Delaware in 1981. A closely held corporation, Lawrence owns stock in a group of subsidiaries, principally Dailey, Inc., that manufacture and rent oil field equipment. In 1981 Lawrence applied for and received a certificate of authority to do business in Texas. After filing its first franchise tax return in 1982, Lawrence withdrew the certificate in 1983. Following a franchise tax audit covering May 1, 1983, through April 30, 1986, the Comptroller concluded that Lawrence was doing business in the state, subjecting it to franchise tax liability of $837,681.31 for the three reporting years. *See* Tax Code § 171.001(a)(1). After an unsuccessful administrative appeal of this assessment, Lawrence paid the tax under protest. As required by statute, a letter outlining the reasons for the protest accompanied this payment. Tax Code § 112.051(b). In this letter Lawrence contended that it was "not doing business in Texas during the audited period" and "did not have sufficient constitutional nexus with Texas to allow the imposition of the franchise tax."

Lawrence then filed a tax protest suit against the Comptroller to recover the assessment for the three-year audit period. Tax Code § 112.053. In a bench trial, Lawrence reasserted that it was not doing business in Texas within the provisions of the Tax Code and that it lacked sufficient constitutional nexus to the state to allow imposition of franchise taxes. Contrary to its initial position, however, Lawrence stipulated at trial that it was subject to the franchise tax for the last two audit years of the three-year period. The only issue at trial, therefore, was the propriety of the $502,740 tax assessment for the first audit year: May 1, 1983, through April 30, 1984 ("the audit year").[1]

1. Lawrence does not challenge the actual calcu-    lation of the tax, which was based on a percent-

At trial, Lawrence's case consisted primarily of the live testimony of William Sutton, an officer of Lawrence. Sutton testified that during the audit year Lawrence had its principal place of business in Nevada and that Lawrence was merely a holding company created for estate-planning purposes. In stark contrast, the Comptroller's case consisted of numerous documents that tended to show that Lawrence's principal place of business was Texas and that Lawrence managed and directed at least some of the activities of its subsidiaries. The court rendered judgment for the Comptroller.

Following a timely request, the trial court filed findings of fact and conclusions of law. In its first three findings of fact, the court found that Lawrence: (1) "is a Delaware corporation with a headquarters and principal place of business in Texas;" (2) "does business in Texas;" and (3) "has substantial physical presence in Texas." In addition to these factual findings, the trial court's conclusions of law state that Lawrence "does business in Texas and is subject to the Texas franchise tax within the meaning of Tex.Tax Code Ann. § 171.001" and "has federal Commerce Clause nexus with Texas." Further, the court concluded that it did not have subject matter jurisdiction over Lawrence's constitutional due process claims. Lawrence appeals, contending in two points of error that it was not doing business in Texas and lacked constitutional nexus with the state.

## DOING BUSINESS IN TEXAS

Appellant's first point of error simply states: "Lawrence was not doing business in Texas." Lawrence's brief does not indicate whether this is a challenge to the trial court's fact finding or to its legal conclusion. When questioned during oral argument, and later in a post-submission letter brief, Lawrence adopted the position that "doing business" is a question of law for the court, requiring no deference to the trial court's express or implied fact findings. The Comptroller, on the other hand, maintains that Lawrence is actu-

ally challenging adverse determinations of fact made by the trial court, making this point of error essentially a sufficiency-of-the-evidence point. We begin with this threshold issue.

### A. Factual or Legal Question

■ Because a factual finding that a company is "doing business" in a state often has direct legal consequences, it has sometimes been tossed into the imprecise category of a "mixed question of law and fact." *See Harris v. Columbia Broadcasting Sys., Inc.,* 405 S.W.2d 613, 616 (Tex.Civ.App.—Austin 1966, writ ref'd n.r.e.); *Chicago, R.I. & Pac. Ry. Co. v. Neil P. Anderson & Co.,* 130 S.W. 182, 183 (Tex.Civ.App.1910), *rev'd on other grounds,* 105 Tex. 1, 141 S.W. 513 (1911). However, it is possible to describe the factual and legal components of "doing business" with greater clarity.

The determination of whether a company is "doing business" in a state is inherently a factual inquiry. *See Ramsey v. Investors Diversified Servs., Inc.,* 248 S.W.2d 263, 266–67 (Tex.Civ.App.—Austin 1952, writ ref'd n.r.e.); 19 C.J.S. *Corporations* § 907 (1990); 36 Am.Jur.2d *Foreign Corporations* § 317 (1968). The fact-finder, of course, has the duty to resolve any conflicts in the evidence to determine the actual conduct of the corporation. *See Blackwood v. Tom Benson Chevrolet Co.,* 702 S.W.2d 732, 733 (Tex.App.—San Antonio 1985, no writ); *Mediacomp, Inc. v. Capital Cities Communication Inc.,* 698 S.W.2d 207, 211 (Tex.App.—Houston [1st Dist.] 1985, no writ). Once the particular facts and circumstances of a case are resolved, these must be applied against the backdrop of the applicable statute. *See* 36 Am.Jur.2d *Foreign Corporations* § 317 (1968).

When there is no factual dispute as to a company's activities, the question of "doing business" is, for all intents and purposes, a legal question. This is because the true legal issue (whether a company is subject to paying franchise taxes) depends primarily on the

age of Lawrence's business receipts from divi-

dends and interest from its Texas subsidiaries.

answer to a single general factual determination (whether the company is doing business in the state). Thus, if a trial court finds on the basis of undisputed facts that a company is doing business in the state, this usually leads directly to a legal conclusion that the company is subject to paying franchise taxes, which is reviewable by a court of appeals for its correctness. *See Bullock v. House of Lloyd, Inc.*, 797 S.W.2d 133, 134 (Tex.App.—Austin 1990) (appellate review of trial court judgment made on stipulated facts), *rev'd sub nom. Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245 (Tex.1991); *Ramsey*, 248 S.W.2d at 266–67; *see also Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex.App.—Austin 1992, no writ) ("The trial court's conclusions of law are always reviewable."). Likewise, our own legal conclusion on undisputed facts that a company is "doing business" is reviewable by the supreme court. *See Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 246 (Tex.1991); *S.R. Smythe Co. v. Fort Worth Glass & Sand Co.*, 105 Tex. 8, 142 S.W. 1157, 1157 (1912) ("The sole question for decision is whether under the facts and circumstances presented, which are practically uncontroverted, the plaintiff transacted business in this state. . . .").

However, when there is a dispute about the relevant characteristics or conduct of a company, a finding that the company is "doing business" presents a slightly different situation. In this context, it becomes clearer that the finding of "doing business" is really one of "ultimate" fact. A finding of ultimate fact is the product of logical reasoning and inference from more specific, evidentiary facts, i.e., those "basic" or "underlying" facts that are the direct product of the truth-finding function of the fact-finder. *Wilson v. Metcalf*, 257 S.W.2d 855, 858 (Tex.Civ.App.—Amarillo 1953, writ ref'd n.r.e.); 89 C.J.S.

*Trial* § 648 (1955). This is similar to the relationship between findings of basic or underlying fact and findings of ultimate fact made by an administrative agency.[2] *See* Administrative Procedure Act, Tex.Gov't Code Ann. § 2001.141 (West 1995). *See generally* John Powers, *Judicial Review of the Findings of Fact Made by Texas Administrative Agencies in Contested Cases*, 16 Tex.Tech L.Rev. 475, 476–79 (1985).

When a challenge is made to an ultimate factual finding, or to the underlying basic facts that support it, we must address it as we would any challenge to the sufficiency of the evidence to support a fact finding. *See De Llano v. Moran*, 160 Tex. 490, 333 S.W.2d 359, 360–61 (1960); *cf. Posner v. Dallas County Child Welfare Unit*, 784 S.W.2d 585, 587 (Tex.App.—Eastland 1990, writ denied) (unchallenged ultimate fact findings are binding). If there is some evidence of a substantial and probative character to support the trial court's findings of fact—i.e., if there is enough evidence that reasonable minds could differ—such findings are controlling and will not be disturbed, even though the appellate court might have reached a different decision had it been the original fact-finder. *Ray v. Farmers' State Bank*, 576 S.W.2d 607, 609 (Tex.1979); *Central Power & Light Co. v. Bullock*, 696 S.W.2d 30, 33 (Tex.App.—Austin 1984, no writ); *Nelson v. Jordan*, 663 S.W.2d 82, 86 (Tex.App.—Austin 1983, writ ref'd n.r.e.). This is precisely the type of challenge presented in this appeal.

## B. Lawrence's Factual Challenge

Lawrence challenges the finding of ultimate fact that it was doing business in Texas during the audit year. The gist of its argument is twofold: (1) its principal place of business is in Nevada, not Texas, and (2) it did not manage and control its subsidiaries.

2. In the administrative agency context, the distinction between ultimate facts and underlying or basic facts is recognized by statute. *See* Tex. Gov't Code Ann. § 2001.141(d) (West 1995). Outside of that context, the distinction is not often discussed in Texas, because trial courts are not required to file findings of underlying fact.

*See Harding v. Harding*, 461 S.W.2d 235, 236 (Tex.Civ.App.—San Antonio 1970, no writ). As a general concept, however, the distinction is valid. We use it here simply to add clarity to our discussion of why the "doing business" issue is, at its essence, a question of fact.

Both of these are underlying factual components of "doing business."

■ The trial court specifically found that Lawrence had its principal place of business in Texas.[3] The evidence surrounding Lawrence's principal place of business during the audit year was conflicting. Sutton testified that Lawrence's principal place of business was Nevada. The testimony of this interested witness was controverted, however, by Lawrence's own Delaware franchise tax return for the audit year, which lists Conroe, Texas, as Lawrence's "principal place of business outside of Delaware." Lawrence attempted to contest this evidence with testimony of another interested witness, Blair Nelson, the corporate official who actually signed the Delaware franchise tax return. Nelson testified that the Conroe address actually belonged to Dailey, not Lawrence, and had "no real reflection on whether you're doing business or not." Other testimony, however, showed that all of Lawrence's books, records, directors, and officers were in Texas. In addition, Lawrence's own board minutes from November 30, 1983, begin with a "waiver of notice" reciting that all the directors of Lawrence consented to the meeting "at the principal offices located at 3663 North Belt East, Suite 300, Houston, Texas." When the court found that Texas was Lawrence's principal place of business, it resolved these evidentiary conflicts against Lawrence. We cannot disturb this factual finding in light of the conflicting evidence. *Runnells v. Firestone,* 746 S.W.2d 845, 851 (Tex.App.— Houston [14th Dist.]), *writ denied per curiam,* 760 S.W.2d 240 (Tex.1988); *Belford v. Belford,* 682 S.W.2d 675, 677 (Tex.App.— Austin 1984, no writ).

■ All parties agree that Lawrence was a holding company. The Comptroller contends that Lawrence was doing business in Texas

in part because it was, from its base in Texas, actively managing and directing the affairs of its subsidiaries. The primary evidence offered by the Comptroller for this management activity is the minutes from Lawrence's November 30, 1983, board meeting. These board minutes reflect that Lawrence: established company-wide goals, including financial planning; created an executive committee, composed of J.D. Lawrence and Sutton, to conduct company business; and, at Sutton's request, engaged in "strategic planning" for the company.[4] As with the Delaware tax return, Lawrence attempted to explain away this document through testimony of one of the interested participants, Sutton himself. Sutton testified that this set of minutes, which he personally drafted and signed, was merely a duplicate set of minutes from the Dailey board meeting that "was just papering behind what Dailey was doing." Again, however, the trial court had the opportunity to view and compare both the documents and the trial testimony of Sutton and presumably concluded that the minutes more accurately reflected Lawrence's true business activity. Given the conflicting evidence and our standard of review, we must defer to this factual determination.

Aside from the board minutes, there were additional underlying facts bearing on the managing-and-directing issue. The evidence relevant to these facts was also contested. One of these underlying facts concerned the existence of a centralized cash management system. Deposition testimony from David Tighe established that all revenue from Lawrence and its subsidiaries flowed into a "cash management system," including a "concentration account" in Lawrence's name. Tighe initially testified that this system was in place as early as January 1984, placing it within the audit year. Later, he contradicted his own deposition testimony and stated it was not in place until June 1984. Sutton also

---

3. The trial court made a separate finding of fact that Lawrence's principal place of business was in Texas. Lawrence's brief does not contain a point of error directly challenging this finding. Rather, its argument concerning "doing business" includes a section attacking the finding

and directing the court to the disputed testimony described below.

4. Sutton admitted on cross-examination that the word "company" in the board minutes meant Lawrence and its subsidiaries.

testified to the existence of the cash control policy, but dated it as of November 1984. In earlier testimony, however, Sutton had indicated that he had no personal knowledge of when the cash management system began and that Tighe would have a more detailed knowledge of the system. As with the board minutes, given the trial court's finding of ultimate fact that Lawrence was doing business in Texas, we must presume that the trial court resolved this underlying fact issue against Lawrence.

A similar scenario surrounds the construction of Lawrence's corporate headquarters at One Lawrence Center in Conroe. The Comptroller presented documentary evidence tending to show Lawrence's active participation in the project; Lawrence countered with the testimony of interested witnesses. We review this underlying fact issue following the same process as the others. The trial court was in a position to evaluate the weight and credibility of this evidence and presumably resolved the issue adversely to Lawrence.

All of these underlying facts concerning Lawrence's management of the subsidiaries were the subjects of disputed evidence. When the trial court made its finding of ultimate fact that Lawrence was doing business in Texas, we must presume that it resolved all conflicts in the underlying facts against Lawrence. *See Lindner v. Hill*, 691 S.W.2d 590, 592 (Tex.1985); Tex.R.Civ.P. 299. We cannot substitute our judgment for the trial court's on these factual determinations. Few propositions are more fundamental to appellate review than that great deference is given to fact findings made by the trier of fact, who had the opportunity to view the demeanor of the witnesses and weigh their credibility. *See, e.g., McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696–97 (Tex. 1986); *Paul v. Perez*, 7 Tex. 338, 346 (1851). Given our unwillingness—indeed, our inability—to overturn the trial court's express and implied factual findings, the factual setting that emerges is a corporation that has its principal place of business in Texas and that manages and directs activities of its subsidiaries.

## C. The Mixed Fact/Law Question

■ The next question is whether a holding company with its principal place of business in Texas that manages and directs at least some of the affairs of its subsidiaries is "doing business" in Texas so as to be subject to franchise tax. Conceptually, this is actually a two-step process: (1) Do the underlying facts and the reasonable inferences that may be drawn therefrom logically support the ultimate facts found by the court? (2) Do those ultimate facts logically support the court's conclusions of law? For purposes of our discussion here, we roll these two questions into one.

While the Tax Code has gone through many incarnations, since 1941 the legislature has imposed a franchise tax on all corporations doing business in Texas. *House of Lloyd*, 815 S.W.2d at 246–47. The current Code imposes a franchise tax on "each corporation that does business in this state." Tax Code § 171.001(a)(1). The phrase "does business" is not defined in the Code. However, the supreme court directly addressed the meaning of "doing business" for purposes of the franchise tax in *House of Lloyd*. In *House of Lloyd*, the supreme court invalidated a long-standing comptroller rule that erroneously limited "doing business" for franchise tax purposes to the definition of "transacting business" in the Texas Business Corporation Act. The court noted that the legislature intended to expand the state's authority to tax corporations that were incorporated elsewhere but did business here. *House of Lloyd*, 815 S.W.2d at 247. Interpreting the legislature's intent, the court concluded that "doing business" means "conducting business activities in Texas." *Id.* While this decision post-dates Lawrence's audit year, it indicates that the phrase "doing business" in the statute is not ambiguous and basically means what it says: a foreign corporation that conducts business in Texas is subject to paying franchise taxes.

Further guidance on what constitutes doing business for franchise tax purposes comes from the Comptroller's rules in place

during the audit year. From 1975 through September 5, 1983, Comptroller regulations provided that "a corporation is 'transacting' or 'doing' business in Texas when it is transacting *some substantial part* of its ordinary business in Texas." 34 Tex.Admin.Code ("TAC") § 3.406 (1975) (emphasis added). Effective September 5, 1983, the Comptroller changed the regulation to provide that a corporation was doing business if it was "transacting *some part* of its ordinary business in Texas." 34 TAC § 3.406(b) (1983) (emphasis added). This revised regulation also identified specific activities that constituted doing business in the state. These included the following: "Holding companies. Maintaining of a corporation's principal place of business in Texas to manage and direct, and/or perform services for subsidiaries or investee corporations." 34 TAC § 3.406(c)(14). Additionally, a corporation with its principal place of business in Texas is presumed to be doing business in the state. 34 TAC § 3.406(c)(15).

When placed against this backdrop, it is clear that a foreign holding company that has its principal place of business in Texas and that manages and directs the affairs of its subsidiaries is doing business in Texas and is subject to franchise tax. The legislative authorization to collect franchise taxes from foreign companies conducting business in Texas has been unchanged since 1941. The Comptroller's rules that existed during the audit period likewise indicate that this type of business activity would subject the company to tax. Even Lawrence has not seriously challenged that such a company is subject to tax. Rather, it simply contends it was not such a company. Given the trial court's resolution of the factual issues, however, its legal conclusion that Lawrence was subject to franchise tax for the audit year was not erroneous. We overrule Lawrence's first point of error.

## CONSTITUTIONAL NEXUS

▄▄▄ Lawrence's second point of error is that the "tax assessment violated due process." The Comptroller challenged the trial

court's jurisdiction over this due process claim on the ground that the issue was not raised in its written protest letter. The Code requires that tax protests must be "in writing and must state fully and in detail each reason for recovering the payment." Tax Code § 112.051(b). Issues determined in the tax protest suit are then "limited to those arising from the reasons expressed in the written protest as originally filed." Tax Code § 112.053(b). This requirement serves a twofold purpose: (1) allowing the Comptroller the first opportunity to determine the merits and validity of the protest; and (2) preventing the protestor from taking advantage by "changing horses" at trial. *See James v. Consolidated Steel Corp.,* 195 S.W.2d 955, 962 (Tex.Civ.App.—Austin 1946, writ ref'd n.r.e.).

Lawrence's protest letter included the following sentence: "Lawrence did not have sufficient constitutional nexus with Texas to allow imposition of the franchise tax." The trial court concluded that Lawrence had "federal Commerce Clause nexus with Texas"; the court also concluded, however, that it lacked subject matter jurisdiction over Lawrence's due process claim, presumably on the ground that it had not been adequately raised by the protest letter. Lawrence does not challenge the trial court's conclusion that it had Commerce Clause nexus with Texas. Commerce Clause nexus requires a "substantial nexus" with a state. *Quill Corp. v. North Dakota,* —— U.S. ——, ——, 112 S.Ct. 1904, 1913, 119 L.Ed.2d 91 (1992). In contrast, due process nexus is a proxy for notice and requires only minimum contacts. *Id.* The trial court's unchallenged conclusion that Lawrence had Commerce Clause nexus with Texas indicates it must have met the lesser threshold of due process nexus. *See id.* at —— n. 7, 112 S.Ct. at 1914 n. 7 (suggesting that "every tax that passes contemporary Commerce Clause analysis is also valid under the Due Process Clause"). However, since the Supreme Court has admonished that the superior practice is to approach each issue separately, we independently address the merits of the due process claim. *See id.* at ——, 112 S.Ct. at 1909.

The Comptroller argues that the phrase "constitutional nexus" could have meant either Commerce Clause nexus or Due Process Clause nexus and was therefore too indefinite to place the due process question at issue. We disagree. We think Lawrence's use of the phrase "constitutional nexus," although less than ideally definite, was sufficient to alert the Comptroller to the subject matter of the protest as required by the Tax Code, thereby giving the trial court jurisdiction over Lawrence's due process claim. We conclude, however, that Lawrence had sufficient nexus with the state to subject it to franchise tax.

The requirements of due process have been recently pronounced by the United States Supreme Court in *Quill*:

> Thus, at the most general level, the due process nexus analysis requires that we ask whether an individual's connections with a State are substantial enough to legitimate the State's exercise of power over him. We have, therefore, often identified 'notice' or 'fair warning' as the analytic touchstone of due process nexus analysis.

—— U.S. at ——, 112 S.Ct. at 1913.

The essence of Lawrence's argument is that it relied on the Comptroller's regulations linking the franchise tax statute to language in the Business Corporation Act stating that having shareholder and director meetings in the state did not constitute doing business in Texas. Lawrence once again directs us to the testimony of Blair Nelson, Lawrence's tax manager. Nelson testified that based on his review of "various and sundry Texas law and comptroller's rulings," the only state Lawrence was doing business in was Nevada. This reliance, Lawrence argues, stripped it of fair notice of taxation.

However, constitutional due process does not hinge on either the language of old Comptroller rules or the opinion of Lawrence's tax manager, but on whether Lawrence's connections were "substantial enough to legitimate the State's exercise of power."

*Quill*, —— U.S. at ——, 112 S.Ct. at 1913. Based on the trial court's factual determinations, Lawrence was not merely a holding company that held director meetings in Texas, but a company that had its principal place of business in Texas. This alone provides sufficient "minimum contacts" with the state to meet the due process nexus requirement. Beyond this, the trial court found that Lawrence was actually transacting business in Texas, that is, managing and directing the affairs of its subsidiaries. To be sure, Lawrence continues to challenge these adverse factual findings. However, these determinations having been made on conflicting evidence, we cannot say that taxing a corporation that has its principal place of business in Texas and that is actually doing business in Texas violates due process protection. Point of error two is overruled.

## CONCLUSION

Lawrence's appeal is fundamentally a challenge to various express and implied fact findings of the trial court. Unwilling to disturb these findings, we overrule both points of error. The judgment of the trial court is affirmed.