TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00617-CV






Susan Combs, Successor to Carole Keeton Strayhorn, Comptroller of Public Accounts of
the State of Texas, and Greg Abbott, Attorney General of the State of Texas, Appellants


v.


Health Care Services Corporation, A Mutual Legal Reserve Company,

Successor to Blue Cross and Blue Shield of Texas, Inc., Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT

NO. D-1-GN-04-001955, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N



 This is a sales tax refund case in which Blue Cross and Blue Shield of Texas, Inc.
("Blue Cross") (1) claimed refunds on grounds related to the tax code's sale-for-resale exemption, as
applied to purchases of taxable items in connection with its performance of three federal government
contracts. After the Comptroller of Public Accounts denied Blue Cross's refund claims, Blue Cross
sued in district court and obtained a judgment awarding it approximately $4.8 million, plus interest.
The Comptroller (2) appeals the judgment. In four issues, the Comptroller asserts that (1) the sale-for-resale exemption does not, as a matter of law, apply to the Blue Cross purchases in question if
the exemption is properly construed; (2) there is no evidence that any taxable items were "resold"
to the federal government as a matter of state contract law; (3) there is no evidence to support
the district court's determination that Blue Cross did not "double-recover" by getting reimbursed by
the federal government for sales tax payments for which it also recovered a refund; and (4) the
district court lacked jurisdiction over certain of Blue Cross's refund claims because Blue Cross
failed to exhaust its administrative remedies. We will overrule these contentions and affirm the
district court's judgment.


FACTUAL AND PROCEDURAL BACKGROUND

 Blue Cross is a private insurance carrier that entered into separate contracts with
the federal government to administer three different federal health insurance programs. The first
two contracts were with the United States Department of Health and Human Services ("HHS")
and concerned the administration of federal programs known as "Medicare Part A" and "Medicare
Part B." (3) Blue Cross's duties under these two contracts included performing a variety of specific
functions to carry out the purposes of the Medicare programs, including reviewing claims and, as
appropriate, paying the claims out of the government's trust fund. In return, HHS paid Blue Cross's
costs of claims administration. The third contract was with the United States Office of Personnel
Management ("OPM") and involved the administration of the Federal Employees Health Benefit
Program ("FEP"). (4) This contract required Blue Cross to provide health care plans for federal
employees, including enrollment, review of claims, and payment of benefits. In return, the OPM
reimbursed Blue Cross for certain costs the company incurred in administering the FEP.

 During the refund period--December 1, 1988 through December 31,
1998--Blue Cross purchased and paid sales tax on various taxable items in connection with
its performance of the three contracts. The parties later stipulated to seven different categories of
tangible personal property and taxable services that Blue Cross acquired:



 "Allowable"--purchases of tangible personal property (e.g., office supplies, furniture).

 "Capitalized Assets"--sales tax paid on the purchase of capital assets that Blue Cross
"booked" as an asset, depreciated, and claimed as a depreciation expense to the federal
government.

 "Utilities"--purchases of gas and electricity.

 "Leases" of office equipment and items such as telephones, postage machines, and water
coolers.

 "Software/Software Maintenance," including purchases of software (i.e., licenses to use it)
and maintenance of the software.

 "Taxable Services on Tangible Personal Property," such as repairs of computer equipment
or purchases of a burglar or fire alarm service.




 "Maintenance on Tangible Personal Property," including maintenance agreements for the
service and maintenance of computer hardware and other tangible personal property. (5)




 Blue Cross sought refunds from the Comptroller of the sales taxes Blue Cross had
paid on these purchases. Blue Cross asserted that it was entitled to a refund because these purchases
came within the tax code's sale-for-resale exemption from the sales and use tax. See Tex. Tax Code
Ann. § 151.302 (West 2008) ("The sale for resale of a taxable item is exempted from the taxes
imposed by this chapter."). The "resale," Blue Cross reasoned, occurred through the operation of
title-passage provisions that each of the three contracts incorporated from the Federal Acquisition
Regulations ("FAR"). See 48 C.F.R. § 1.101 (1997). The two Medicare contracts incorporated
FAR 52.245-5(c):

(1) The Government shall retain title to all Government-furnished property.


(2) Title to all property purchased by the Contractor for which the Contractor
is entitled to be reimbursed as a direct item of cost under this contract shall
pass to and vest in the Government upon the vendor's delivery of such
property.



Id. § 52.245-5(c). The FEP contract incorporated FAR 52.245-2(c), which includes the following
language:


(1) The Government shall retain title to all Government-furnished property.


(2) All Government-furnished property and all property acquired by the
Contractor, title to which vests in the Government under this paragraph
(collectively referred to as Government property), are subject to the
provisions of this clause. However, special tooling accountable to this
contract is subject to the provisions of the Special Tooling clause and is not
subject to the provisions of this clause. . . .


. . . . 


(4) If this contract contains a provision directing the Contractor to purchase
material for which the Government will reimburse the Contractor as a direct
item of cost under this contract--


 (i) Title to material purchased from a vendor shall pass to and vest in
the Government upon the vendor's delivery of such material; and

 

 (ii) Title to all other material shall pass to and vest in the Government
upon--

 

 (A) Issuance of the material for use in contract performance;

 (B) Commencement of processing of the material or its use in
contract performance; or

 (C) Reimbursement of the cost of the material by the
Government, whichever occurs first.



Id. § 52.245-2(c). In turn, Blue Cross asserted, its purchases of the above tangible personal property
and taxable services in performing the contracts constituted "sales" of "tangible personal property
or a taxable service to a purchaser who acquires the property or service for the purpose of reselling
it . . . in the normal course of business in the form or condition in which it is acquired or as an
attachment to or integral part of other tangible personal property or taxable service," so as to come
within the sale-for-resale exemption. See Tex. Tax Code Ann. §§ 151.006(a)(1) (defining "sale for
resale"), .302 (creating sale-for-resale exemption).


 The Comptroller disagreed and denied Blue Cross's refund claims. After
unsuccessfully pursuing administrative appeals of the Comptroller's rulings, Blue Cross
filed suit under section 112.151 of the tax code. See id. § 112.151 (West 2008). (6) Blue Cross
obtained a partial summary judgment that it was entitled to the sale-for-resale exemption with
respect to three categories of tangible personal property it had purchased in performing the
contracts--"Allowable," "Utilities," and "Capitalized Assets"--and had billed to and been
reimbursed by the federal government as direct costs. 

 The parties proceeded to a bench trial on the remaining issues, including whether
Blue Cross was entitled to exemptions with respect to its purchases of the remaining categories of
taxable items and the amount of the sales-tax refund to which it was entitled. Before trial, the
Comptroller filed a motion for reconsideration of the district court's partial summary-judgment
ruling. Also, the parties stipulated to a number of facts, including the refund amounts to which
Blue Cross would be entitled for each category of its purchases if it proved that the category
came within the exemption. Additionally, shortly before trial, the Comptroller filed a plea to the
jurisdiction asserting that Blue Cross had failed to exhaust its administrative remedies with respect
to two "new" refund claims she contended Blue Cross had raised in a trial brief.

 Following trial, the district court denied the Comptroller's motion for reconsideration
and her plea to the jurisdiction. It further held that Blue Cross was entitled to sales-tax exemptions
for each category of its purchases and, based on the parties' stipulations, ordered that a total of
$4,807,438.42 in sales tax Blue Cross paid on its purchases qualified for the exemptions. However,
the district court found that to the extent Blue Cross had already been reimbursed by the
federal government for these sales taxes, it would obtain an impermissible double-recovery. It
permitted the parties to reopen the evidence to present proof as to the amount of sales taxes for
which Blue Cross was entitled to a refund and had not "double-recovered" by being reimbursed by
the federal government. After hearing this evidence, the district court found that no double-recovery
would occur if Blue Cross was refunded the full amount of sales taxes the district court had
previously determined, and rendered final judgment accordingly. It subsequently entered findings
of fact and conclusions of law.

 The Comptroller appeals. 


ANALYSIS

 In her four issues, the Comptroller asserts that (1) the sale-for-resale exemption
does not, as a matter of law, apply to the Blue Cross purchases in question if the exemption is
properly construed; (2) there is no evidence that any taxable items were "resold," as a matter of
state contract law, by being conveyed to the federal government through the FAR title-passage
clauses; (3) there is no evidence to support the district court's findings that Blue Cross did
not "double-recover" refunds for sales-tax payments for which it was reimbursed by the
federal government; and (4) the district court erred in denying her plea to the jurisdiction as to
Blue Cross's two "new" refund claims.



Construction of sale-for-resale exemption

 The sale-for-resale exemption is an exception to the general rule that sales tax
is imposed on each "sale" of a "taxable item" in the state. See Tex. Tax Code Ann. § 151.051(a).
Specifically, the sale-for-resale exemption exempts a purchaser from paying sales tax on the
purchase of "tangible personal property or a taxable service [that the purchaser purchased] for
the purpose of reselling it . . . in the normal course of business in the form or condition in which it
is acquired or as an attachment to or integral part of other tangible personal property or taxable
service." See id. § 151.106(a)(1). "Taxable items" are either "tangible personal property" or
"taxable services." See id. § 151.010. "Tangible personal property" is defined as "personal property
that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any
other manner," including computer programs. See id. § 151.009. "Taxable services" include certain
statutorily enumerated categories of services that the Comptroller has been delegated exclusive
jurisdiction to interpret. See id. § 151.0101 (including, e.g., repairs of tangible personal property,
maintenance for computer programs, and security services). As for "sale," the tax code defines
"sale" or "purchase" as, among other things, "a transfer of title or possession of tangible personal
property," "a lease . . . or rental of tangible personal property," or the performance of a "taxable
service," when "done or performed for consideration." See id. § 151.005(1)-(3). 

 The district court made findings and conclusions that the items classified as "Leases"
and the computer software included in "Software/Software Maintenance" were (along with the
categories of items addressed by the partial summary judgment) "tangible personal property" used
by Blue Cross to perform the three contracts on behalf of the federal government, that Blue Cross
purchased this property for the purpose of transferring its interests in the property to the
federal government in the form or condition in which it was acquired, and that the property
was conveyed to the federal government under the FAR clauses. (7) See id. §§ 151.006, .302. The
district court further found that Blue Cross's "normal course of business" included performing
its "core functions" under the contracts, and that these functions included purchasing the
aforementioned tangible personal property and services for use in performing the contracts. 

 On appeal, the Comptroller does not deny that the purchases were made or that the
FAR clauses passed title to the federal government of at least some categories of tangible personal
property that Blue Cross acquired. Likewise, the Comptroller acknowledges that such passage of
title under FAR clauses may constitute a "resale" of the tangible personal property within the
meaning of the sale-for-resale exemption, such that the contractor would be entitled to the
exemptions with respect to its purchase of the property. See Day & Zimmermann, Inc. v. Calvert,
519 S.W.2d 106, 108 (Tex. 1975); Strayhorn v. Raytheon E-Systems, Inc., 101 S.W.3d 558, 570
(Tex. App.--Austin 2003, pet. denied). However, in her first issue, the Comptroller makes several
assertions disputing whether the sale-for-resale exemption, if properly construed, applies to the
particular purchases Blue Cross made.

 Statutory construction presents a question of law that we review de novo. See State
v. Shumake, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is
to give effect to the legislature's intent. Id. We seek that intent "first and foremost" in the statutory
text. Lexington Ins. Co. v. Strayhorn, 209 S.W.3d 83, 85 (Tex. 2006). We rely on the plain
meaning of the text, unless a different meaning is supplied by legislative definition or is apparent
from context, or unless such a construction leads to absurd results. City of Rockwall v. Hughes,
246 S.W.3d 621, 625-26 (Tex. 2008); see Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words
and phrases shall be read in context and construed according to the rules of grammar and
common usage."). 

 However, with regard to a statute that an agency is charged with enforcing, we
give serious consideration to the agency's construction of it, so long as that construction is
reasonable and consistent with the statutory language, and this is particularly true when the statute
involves complex subject matter within the agency's area of expertise. See First Am. Title Ins. Co.
v. Combs, 258 S.W.3d 627, 632 (Tex. 2008); cf. Rylander v. Fisher Controls Int'l, Inc., 45 S.W.3d
291, 302 (Tex. App.--Austin 2001, no pet.) (courts "do not defer to administrative interpretation
in regard to questions which do not lie within administrative expertise or deal with a
nontechnical question of law"). Further, statutory exemptions from taxation--like the sale-for-resale
exemption--are "strictly construed" against the taxpayer because "they undermine equality and
uniformity by placing a greater burden on some taxpaying businesses and individuals rather than
placing the burden on all taxpayers equally." North Alamo Water Supply Corp. v. Willacy County
Appraisal Dist., 804 S.W.2d 894, 899 (Tex. 1991). The burden of proof for showing the exemption
applies lies with the claimant. See id. An exemption must affirmatively appear in the statute, and
all doubts are resolved in favor of the taxing authority. See Bullock v. National Bancshares Corp.,
584 S.W.2d 268, 272 (Tex. 1979). On the other hand, the concept that a tax exemption must be
"strictly" construed "cannot be used as an excuse to stray from reasonableness." Sharp v. Tyler Pipe
Indus., Inc., 919 S.W.2d 157, 161 (Tex. App.--Austin 1996, writ denied). Likewise, "[a]lthough
construction of exemption statutes is generally to be construed against the taxpayer, the overall
scheme and intent of the legislation must not be overlooked." Id. at 161-62 (quoting Idaho State Tax
Comm'n v. Haener Bros., Inc., 828 P.2d 304, 307 (Idaho 1992)).

 The Comptroller first argues that Blue Cross is not entitled to the sale-for-resale exemption with respect to any of the purchases because it "resold" only non-taxable
administrative services to the federal government. Even if title to some taxable items passed to the
federal government under FAR clauses, the Comptroller reasons, this would be only "incidental" to
Blue Cross's "sale" of non-taxable services, but would not be a "resale" of the taxable items
themselves. Relatedly, the Comptroller asserts that Blue Cross is not entitled to the exemption
because the federal contracts do not require Blue Cross to purchase the taxable items, which she
views as further supporting the notion that Blue Cross's purchase of these items were only
"incidental" to its performance of non-taxable administrative services.

 Accepting the Comptroller's characterizations that Blue Cross provided non-taxable
administrative services to the federal government, it remains that Blue Cross undisputedly also
conveyed tangible personal property to the federal government under FAR clauses. And, contrary
to what the Comptroller seems to suggest, there is nothing in the sale-for-resale exemption stating
that Blue Cross must be considered to have done only one and not the other for purposes of the
exemption. The legislature, again, made the exemption available where there is a sale of "tangible
personal property or a taxable service to a purchaser who acquires the property or service for
the purpose of reselling it . . . in the normal course of business in the form or condition in which it
[was] acquired or as an attachment to or integral part of other tangible personal property or
taxable service." Tex. Tax Code Ann. § 151.006(a)(1). The legislature did not indicate that one who
resells tangible personal property cannot also sell a non-taxable service, that the property being
resold cannot also be used to provide the service, or that doing so somehow precludes the application
of the sale-for-resale exemption if it otherwise would apply. See In re Bell, 91 S.W.3d 784, 790
(Tex. 2002) ("courts should not insert words in a statute except to give effect to clear legislative
intent"); see also 7-Eleven, Inc. v. Combs, 311 S.W.3d 676, 687-89 (rejecting analogous attempt
by Comptroller to apply "essence of the transaction" concept beyond narrow context in which
it operates).

 This conclusion finds further support in Day & Zimmermann, which involved a
taxpayer that operated a munitions plant under contract with the federal government. Under the
contract, the federal government paid the taxpayer both for each item it produced (tangible personal
property) as well as for the taxpayer's costs of operating the plant (including administrative services).
The supreme court held that the taxpayer's purchase of items charged as direct costs under
the contract fell within the sale-for-resale exemption because they were "resold" by virtue of
FAR title-passing language. See 519 S.W.2d at 108. There is no hint in Day & Zimmermann
that the taxpayer's provision or "sale" of administrative services to the federal government would
somehow negate the applicability of the exemption with respect to the tangible personal property
it resold. See id. (8)

 We similarly conclude that nothing in the tax code indicates that Blue Cross
must have been required to purchase the taxable items in order for a resale to occur. See Tex. Tax.
Code Ann. § 151.006(a)(1). Even if it did, the district court made findings to support the
conclusions that Blue Cross was, in fact, obligated to make the purchases at issue here, and
the evidence supports those findings. Blue Cross's witness Al Trotter testified that Blue Cross
was obligated and instructed to purchase "the required equipment and property to resell it to the
federal government." He also testified that the Blue Cross "offer[ed] a turnkey operation" under
the contracts. (9) Finally, he testified that Blue Cross's purchase of these taxable items for resale was
a "core function under th[e] contract[s]." Thus, even if the resale exemption requires such
an obligation, the evidence supports the district court's finding that Blue Cross's purchase of the
taxable items was a "core function" of its contracts with the federal government.

 The Comptroller next argues that the sale-for-resale exemption requires Blue Cross
to be both a qualified "seller" (i.e., reseller) and a qualified "purchaser," and, the Comptroller asserts,
Blue Cross is neither. Under the tax code, a "seller" is "a person engaged in the business of making
sales of taxable items of a kind the receipts from the sale of which are included in the measure
of the sales or use tax imposed by this chapter." See id. § 151.008(a). The Comptroller urges that
Blue Cross does not meet this definition because it "does not sell taxable items. Blue Cross
sells nontaxable[] administrative services." With respect to Blue Cross's status as a purchaser, the
Comptroller similarly maintains that Blue Cross was not "in the business of selling, leasing, or
renting taxable items" and could not issue a resale certificate. See id. § 151.054(b) ("A sale is
exempt if the seller receives in good faith from a purchaser, who is in the business of selling, leasing,
or renting taxable items, a resale certificate stating that the tangible personal property or service is
acquired for the purpose of selling, leasing, or renting it in the regular course of business or for the
purpose of transferring it as an integral part of a taxable service performed in the regular course
of business."). These arguments are basically restatements of the Comptroller's assertions that
Blue Cross does not come within the sale-for-resale exemption because it should be considered to
sell only non-taxable administrative services, and we reject them for similar reasons. Blue Cross's
"business" in this context is to perform its contracts with the federal government. See Raytheon,
101 S.W.3d at 567. To perform its contracts here, Blue Cross purchased taxable items and
sold them to the federal government. See Day & Zimmermann, 519 S.W.2d at 110; Raytheon,
101 S.W.3d at 570. Thus, part of Blue Cross's business is to sell taxable items to the
federal government. Consequently, Blue Cross comes within the definitions of "seller" and
"purchaser" that the Comptroller emphasizes. (10)

 The Comptroller next argues that the sale-for-resale exemption does not apply to
Blue Cross's purchases because the "resale" (whether viewed as the sale of non-taxable services
or the sale of taxable items that are exempt) was not taxable. (11) It cites this Court's opinion in
East Texas Oxygen Co. v. State, 681 S.W.2d 741, 745 (Tex. App.--Austin 1984, no writ), for the
broad proposition that a taxpayer cannot qualify for the sale-for-resale exemption if the resale is
ultimately non-taxable. We disagree that East Texas sweeps so broadly. We held that the sale-for-resale exemption did not apply to the transaction at issue--the sale of empty cylinders to a company
who filled the cylinders with gas and then leased the cylinders and sold the gas contents to a
buyer--because a statute "specifically dealing with containers . . . prevail[ed] over and constitute[ed]
an exception to the general rule that 'sales for resale' are exempt from sales tax." Id. at 744-45
(analyzing earlier version of Tex. Tax Code Ann. § 151.322, which covered the sales of containers).
In other words, we held that the resale exemption did not apply because the legislature intended
to impose a tax on the particular transaction at issue--the sale of returnable containers. We did not
hold, however, that the resale exemption did not apply because the subsequent sale was non-taxable.
In the present case, there is no statute that specifically requires Blue Cross's particular transaction
be taxed. Accordingly, East Texas does not inform our decision here.

 It is true that the legislature's general policy goals underlying the sale-for-resale
exemption is in part to avoid the "pyramiding" of sales tax on successive transactions preceding sale
to the ultimate purchaser. Tyler Pipe Indus., 919 S.W.2d 157 at 161. Although that policy concern
would not be implicated to the extent sales tax was not imposed on the ultimate sale or purchase, as
here, we are nonetheless bound to apply the exemption the legislature has written. See id. at 162.
As Day & Zimmermann illustrates, that the ultimate "resale" of taxable items comes within another
exemption does not control whether the sale-for-resale exemption can apply to the reseller's
purchase of those items. See Day & Zimmermann, 519 S.W.2d at 110 (noting that "the second sale
between Day & Zimmermann and the Federal Government is also exempt under [the tax code]")
(emphasis added); Raytheon, 101 S.W.3d at 570 (applying Day & Zimmermann analysis to sale-for-resale exemption for items resold to federal government); see also Roark Amusement & Vending,
L.P. v. Combs, No. 03-10-00105-CV, 2011 WL 255535, at *3 (Tex. App.--Austin Jan. 26, 2011,
no pet. h.) (mem. op.) (applying sale-for-resale exemption to purchase of plush toys used as part of
taxable service even though taxable service was also exempt). 

 Finally, in the alternative, the Comptroller urges that even if the sale-for-resale
exemption applies to Blue Cross's purchase of the tangible personal property addressed in the
partial summary judgment, the remaining categories of taxable items--i.e., taxable services on
tangible personal property, leases of office equipment, and software licenses--were not "resold" to
the federal government because the FAR title-passing clauses apply only to tangible personal
property, not intangibles and services. Regarding the taxable services, however, the Comptroller's
assertion ignores the fact that the tax code does not require a transfer of title or possession for all
transactions under the sale-for-resale exemption. For services, a sale occurs upon performance of
the taxable service. See Tex. Tax Code Ann. § 151.005(3). Here, the district court made a finding
of fact, unchallenged by the Comptroller, that the taxable services and maintenance purchased by
Blue Cross "were performed for the benefit of the federal government on tangible personal property
owned by the federal government." Accordingly, Blue Cross "resold" the services and maintenance
at issue in this case when it performed those services, regardless of the applicability of FAR title-passing provisions.

 Regarding the remaining categories of items to which the Comptroller addresses
this same argument--i.e., leases of office equipment and software licenses--the district court
concluded that these items were tangible personal property, the rights to which were "transferred to
the federal government under the FAR clauses." The Comptroller, although she says that she agreed
to treat the other categories as tangible personal property so that the remaining categories would be
considered intangibles, does not contest the court's conclusion that these items are tangible personal
property, nor does she contest that the rights were transferred to the federal government. Rather, she
simply asserts that title to these items could not have passed under FAR because FAR does not apply
to intangibles. Assuming without deciding that the Comptroller is correct that the FAR title-passing
provisions do not apply to intangibles, the leases and licenses here were found to be tangible
personal property. Further, the district court found that Blue Cross transferred the rights in the leases

and licenses to the federal government. (12) Therefore, under the tax code, a resale occurred because
Blue Cross transferred title or possession to the federal government.

 We overrule the Comptroller's first issue on appeal.


Evidence of resales

 In her second issue, the Comptroller asserts that, apart from her contentions in
her first issue, the district court erred in concluding that the sale-for-resale exemption applied to
Blue Cross's purchases because (1) there were no fact findings that Blue Cross "sold" anything to
the federal government; and (2) the evidence conclusively establishes that Blue Cross did not "resell"
anything to the federal government because there is no evidence of a transfer for consideration. See
Tex. Tax Code Ann. § 151.005 (definition of sale).

 Regarding the Comptroller's complaint about fact findings, the district court
determined that Blue Cross "resold" the tangible personal property classified as "Allowable,"
"Capitalized Assets," and "Utilities," and was entitled to the sale-for-resale exemption with respect
to its purchases of those items as a matter of law on summary judgment. Findings of fact and
conclusions of law are not appropriate in a matter determined by summary judgment. See Linwood
v. NCNB Tex., 885 S.W.2d 102, 103 (Tex. 1994).

 As for the remaining taxable items at issue--i.e., leases of office equipment, software
licenses, services on tangible personal property, and maintenance agreements--we observe that
whether a taxable item is "sold" or "resold" is ultimately a question of law turning on
construction of the tax code, or a mixed question of law and fact turning on application of the
tax code to the factual record. The district court here concluded as a matter of law that the leases of
office equipment and software licenses were "tangible personal property" that Blue Cross
"purchased" for the purpose of reselling to the federal government and then later "resold . . . to the
federal government in the normal course of business," and, as a result, qualified for the tax code's
sale-for-resale exemption.  The district court also concluded as a matter of law that Blue Cross
purchased taxable services and maintenance agreements that "were performed on property owned
by the federal government and were therefore exempt from [tax code's] sales and use tax under
[tax code sections] 151.3111(a) and 151.308(1)." These conclusions, in turn, were supported by the
following fact findings: (1) Blue Cross purchased and paid sales tax on tangible personal property
and services during the refund period, (2) Blue Cross charged or allocated the purchases of tangible
personal property and services to its three contracts with the federal government, (3) Blue Cross's
federal contracts included the FAR title-passing clauses, (4) Blue Cross's purchases of tangible
personal property, including the leases of office equipment and software licenses, and services were
"core functions" under its federal contracts, (5) Blue Cross used the tangible personal property,
including the leases of office equipment and software licenses, to perform its three federal contracts,
(6) the federal government instructed Blue Cross to purchase the services and maintenance
agreements, (7) the services and maintenance agreements purchased by Blue Cross were performed
on the government's tangible personal property, and (8) the rights in the leases of office equipment
and software licenses that Blue Cross purchased were transferred to the federal government. The
district court thus met its rule-296 obligation to resolve the factual disputes in the case and set forth
the legal principles it applied to those facts to resolve the case. See Tex. R. Civ. P. 296.

 As for the Comptroller's assertions that there is no evidence of any transfer for
consideration, she has the burden of demonstrating: (a) the complete absence of a vital fact; (b) the
court is barred by rules of law or of evidence from giving weight to the only evidence offered to
prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or
(d) the evidence establishes conclusively the opposite of the vital fact. See City of Keller v. Wilson,
168 S.W.3d 802, 810 (Tex. 2005). We must consider all of the evidence in the light most favorable
to the fact finding and indulge every reasonable inference that would support it. Id. at 822. The
Comptroller did not meet this burden here.

 The tax code defines "sale" as follows:


"Sale" . . . means any of the following when done or performed for consideration:

 

 (1) a transfer of title or possession of tangible personal property;

 (2) the exchange, barter, lease, or rental of tangible personal property;

 (3) the performance of a taxable service [or] the charge for an extended
warranty or service contract for the performance of a taxable service
. . . .

. . . . 



Tex. Tax Code Ann. § 151.005. In Day & Zimmermann, the supreme court held that the transfer
of title pursuant to the FAR title-passing provisions constituted a sale under a former version of
section 151.005. See Day & Zimmermann, 519 S.W.2d at 110. Like the FAR provisions at issue
in the present case, the contract at issue in Day & Zimmermann provided that title to property
purchased under the contract passed to the federal government upon delivery of the property. 
Similarly, in Raytheon we held that the taxpayer "resold" the items to the federal government
by virtue of the FAR title-passing provisions included in the contract. Accordingly, under the
tax code's definition of sale as interpreted by Day & Zimmermann and Raytheon, Blue Cross
"resold" the taxable items if it purchased the tangible personal property and taxable services under
the terms of contracts subject to FAR title-passing clauses. Also, under the tax code's definition of
sale of services, Blue Cross "resold" the services at issue here if it performed those services. See
Tex. Tax Code Ann. § 151.005(3).

 Blue Cross and the Comptroller entered into the following stipulation of fact:


"Blue Cross purchased tangible personal property and services during the Refund
Period . . . that were directly and indirectly charged or allocated by Blue Cross to
agencies of the federal government under three contracts containing title-passing
Federal Acquisition Regulation clauses . . . ."


This stipulation alone is sufficient to support the district court's conclusions that Blue Cross sold
the tangible personal property and taxable services at issue here to the federal government.
Nevertheless, the record indicates that Blue Cross submitted the following additional evidence at
summary judgment and at trial:



 Copies of the three federal contracts at issue in this case, including the FAR title-passing provisions.

 Documents showing the purchases of tangible personal property, including leases of
office equipment and software licenses, and taxable services made in connection with
the three federal contracts.

 Affidavit testimony by Trotter that--



 (1) Blue Cross's contracts with the government incorporated title passage clauses
from FAR that specifically provided that title to all property purchased under
the contracts passed to and vested in the federal government;


 (2) The federal contracts contained provisions directing Blue Cross to purchase
material for the performance of the contracts; and


 (3) Blue Cross purchased tangible personal property and taxable services
pursuant to the contracts.



 Trial testimony by Trotter that--



 (1) Blue Cross's refund claims covered property that was purchased and resold
to the federal government under the three contracts;


 (2) Blue Cross purchased tangible personal property and services;


 (3) Blue Cross performed the services and maintenance on government property;


 (4) The contracts at issue included FAR clauses that required Blue Cross to
purchase tangible personal property and taxable services and to resell those
purchases to the federal government. Blue Cross made the purchases and
resold the items to the federal government;


 (5) All of the property for which Blue Cross sought reimbursement under the
three contracts was government property because title to the property passed
to the government pursuant to the FAR provisions;


 (6) Blue Cross complies with the FAR provisions;


 (7) Everything purchased under the three contracts was treated as government
property under the FAR provisions because it was used in the performance
of the three contracts;


 (8) The software licenses were transferred to the federal government under the
FAR provisions;


 (9) Leased equipment and software purchased under the contract was
government property under the FAR provisions;


 (10) Everything that Blue Cross purchased was sold to the federal government;


 (11) Leases the Blue Cross purchased were sold to the federal government;


 (12) Blue Cross sold what it purchased to the federal government; and


 (13) Blue Cross purchased title to software and resold it to the federal
government.



The Comptroller offered no contradictory evidence.

 Considering this evidence in the light most favorable to the judgment and
indulging every reasonable inference that would support the district court's finding, we conclude
that a reasonable and fair-minded person could conclude that Blue Cross purchased the taxable
items at issue here and subsequently sold those same items to the federal government when title
passed pursuant to the FAR clauses in the contracts or when the services were performed.
Accordingly, the evidence is legally sufficient to support the district court's finding here. We
overrule the Comptroller's second issue.


Double recovery

 The Comptroller's third issue concerns the limitation of sales-tax refund claims
imposed by section 111.104(f) of the tax code, which provides that "[n]o taxes . . . may be refunded
to a person who has collected the taxes from another person unless that person has refunded all the
taxes . . . to the person from whom the taxes were collected." See Tex. Tax Code Ann. § 111.104(f)
(West 2008). Emphasizing trial testimony to the effect that Blue Cross on occasion might have
been reimbursed under its contracts for sales taxes it paid on the taxable items in question, the
Comptroller asserts that Blue Cross failed to present legally sufficient evidence that any sales tax
payments to which it was held entitled to be refunded did not include or double-recover payments
for which it was reimbursed by the federal government. We disagree. 

 At trial, Blue Cross's witness Al Trotter testified as follows regarding the collection
of sales tax from the federal government:


[Direct Examination by Blue Cross]


Q. And when you submitted those cost reports to the federal government, did
you--did you add anything to the cost that was being presented to the
government above and beyond the--sort of the price that you had under these
contracts? Did you add anything where you were charging tax or collecting
tax--


A. No.


Q. --from the federal government?


A. No.


Q. Okay. So just to use a very simple example, if I go to a coffee shop and I buy
a cup of coffee, typically, the receipt or the invoice or whatever it is would
add tax on top of the purchase price, right?


A. That's correct.


Q. So it would be a dollar for the coffee and, you know, seven or eight cents for
the tax, right?


A. Yes.


Q. Did that same thing happen with your--your cost reports and your
reimbursement from the federal government?


A. No.


Q. So did Blue Cross ever state on any of its cost reports to the federal
government that the stated price that was being represented to the government
included sales or use tax?


A. No.


Q. Was there a rate line item on any of those cost reports for sales or use tax?


A. No.


Q. I want to show you just a couple of sentences from one of the Comptroller's
rules, Comptroller Rule 3.286, Subpart D3. I've highlighted what I want to
ask you about. What this says is--and it's talking about collection of tax. If
you--if you go up and look at the beginning of this, the beginning of D, this
is a rule where they tell you how to collect tax, collection. So under D3 in
rule 3.286, it says, "The amount of the sales tax must be separately stated on
the bill, contract, or invoice to the customer or there must be a written
statement to the customer that the stated price includes sales and use tax." 
Now, did Blue Cross do either of those two things?


A. No.


Q. So there was never any separate statement to the customer, the federal
government, or any amount of tax?


A. No.


Q. Was there ever a written statement to the customer that the stated price
included sales or use tax?


A. No.


. . . . 


[Cross-examination by the Comptroller]


Q. . . . . And I believe it was your testimony that--that Blue Cross did not
separately identify the taxes that it paid on these various purchases on
invoices to the federal government; is that correct?


A. That is correct.


Q. Did Blue Cross pass those costs on through--the expense of those taxes on
through to the federal government?


A. Did they pass them on through?


Q. Yes. Were they charged to the federal government under the contracts?


A. What was charged to the federal government would be all allowable costs
related to tangible personal property.


Q. And were the taxes charged through to the federal government?


A. Well, the taxes were an allowable cost, but no, they were not charged
through.


Q. You didn't--you didn't charge the taxes through to the federal government?


A. We didn't pass taxes through to the federal government. Taxes were an
allowable cost and we were reimbursed for allowable costs.


Q. Okay.


A. Yes.


Q. Okay. The government reimbursed you for the taxes; is that correct?


A. Not in all cases, no.


. . . . 


Q. Okay. Well, if you went out and bought a computer to use for the
performance of these contracts, would that be an allowable cost that you
could pass through to the federal government?


A. Yes, it would be.


Q. Okay. And if you paid sales tax on the purchase of the computer, would you
try to recover the--that sales tax expenses from the federal government,
along with the costs of the computer?


A. Yes.


. . . . 


[Redirect Examination by Blue Cross]


Q. Mr. Trotter. Let me ask you a few follow-up questions. Let me actually start
on the last thing he asked about--


A. Yes.


Q. --which was the tax reimbursement.


A. Yes.


Q. Now, would you explain to the Court the difference between collecting tax,
like we talked about earlier, and having a reimbursement of tax?


A. Tax that we would charge and collect would be calculated and assessed on
the sales price for the property that we would be selling to the federal
government. So if I--so, for example, if I had a computer that cost $100 and
sold it to them, I would actually charge the government $108.25. And then
that's--and on the invoice, it would say, computer $100, tax $8.25, and
they'd pay me $108.25. I would take that $8.25 and I would remit it to the
Comptroller as collected sales tax.


 Reimbursement of cost basically says that--that in setting whatever the price
of the--of the computer is, the government will determine that price based
on what your allowable costs are. It might include installation, might include
shipping, might include sales tax. But the actual accounting records and
transactions do not differentiate between sales tax. You look at our ledger,
you look at our cost report, you look at anything that is submitted to the
federal government for reimbursement, and sales tax is not an item. They
want to know how much you paid for whatever it is that you purchased that
you're trying to resell. And so that is a--that is a reimbursement of cost, but
it is not a charge of sales tax.


Q. So just so we're very clear, you are saying there was no collection of tax from
the federal government?


A. None.



And at the subsequent hearing on the issue of double recovery, the Comptroller cross-examined
Trotter again regarding the collection of sales taxes and he testified as follows:


[T]here are no documents that we have produced that identif[y] the amount
that represents sales tax when coming up to the amount that the federal government
paid us. My contention all along has been that the federal government did not pay
us for sales tax. They paid us for the goods and services under the contract. I am
contending that we have not been reimbursed for sales tax. . . . My contention is that
we were not reimbursed for tax. We were paid for the goods and the services that we
sold to the government.


 The Comptroller presented no controverting evidence showing that Blue Cross had
collected sales tax from the federal government. Instead, she insists that to meet its burden of proof,
Blue Cross was required to present evidence of each individual purchase or resale at issue
demonstrating, transaction-by-transaction, that it did not collect tax from the federal government.
We find nothing in section 111.104(f) that imposes such a burden on Blue Cross. Section 111.104(f)
merely provides that "a person who has collected the taxes from another person" is not entitled to
a refund unless that person refunds those collected taxes. See Tex. Tax Code Ann. § 111.104(f)
(emphasis added). Here, the undisputed and uncontradicted evidence in the record is that Blue Cross
never collected sales tax from the federal government. We overrule the Comptroller's third issue.


Plea to the jurisdiction

 In its fourth and final issue, the Comptroller challenges the district court's denial of
its plea to the jurisdiction. The Comptroller argues that the district court lacked jurisdiction over
two refund claims that Blue Cross allegedly raised for the first time in a trial brief to the
district court. Those two "claims" involve sales-tax exemptions for purchases of taxable services
that were performed on property owned by the federal government. See Tex. Tax Code Ann.
§§ 151.309(1) (exemption for taxable item sold to the federal government), .3111(a) (exemption for
services performed on certain exempt tangible personal property). The Comptroller argues that
because Blue Cross's motion for rehearing specifically referenced only the tax code's sale-for-resale
exemption as the basis for its sales-tax refund claim, the district court lacked jurisdiction over any
other claims based on other tax code exemptions.

 We review de novo the district court's denial of a plea to the jurisdiction. 
Texas Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004). Whether a court has
subject matter jurisdiction is a question of law. Id.

 "[I]n order to maintain an action against the Comptroller for a refund of taxes, a party
must meet the procedural requirements of the tax protest law. Compliance with these procedures
is a jurisdictional prerequisite for the trial court to hear and decide the merits of a tax refund suit."
Central Power & Light Co. v. Sharp, 919 S.W.2d 485, 491 (Tex. App.--Austin 1996, writ denied)
(citations omitted). As the Comptroller asserts, one such procedural requirement provides that "[t]he
grounds of error contained in the motion for rehearing are the only issues that may be raised in a
suit" seeking a refund of taxes paid. Tex. Tax Code Ann. § 112.152 (West 2008).

 In the present case, Blue Cross's motion for rehearing asserted that Blue Cross
"purchased and paid Texas sales and use tax on Taxable Items that were resold to [the
federal government] . . . . includ[ing] . . . tangible personal property and taxable services . . . . [that]
were exempt from taxation as Taxable Items purchased for resale to the Government." Blue Cross
also asserted that its "refund claim includes sales and use taxes paid on the purchase of Taxable
Items the cost of which were [indirectly or directly] charged to [its contracts with the
federal government]." The Comptroller contends that this language limits the court's jurisdiction
to refund claims involving the sale-for-resale exemption. We disagree.

 Section 112.152 is satisfied if the motion for rehearing is sufficiently definite to
identify the grounds for the refund. See Sharp v. International Bus. Machs. Corp., 927 S.W.2d 790,
794 (Tex. App.--Austin 1996, writ denied); see also Lawrence Indus., Inc. v. Sharp, 890 S.W.2d
886, 893 (Tex. App.--Austin 1994, writ denied) (holding that language used was "sufficient to
alert the Comptroller to the subject matter of the protest as required by the tax code"). In IBM,
IBM's motion for rehearing merely asserted the amount of the claimed refund and that the
Comptroller had erred by "not finding and holding that [IBM] has satisfied all conditions to
entitlement to a refund requested by [IBM]." We held that was sufficiently definite to identify IBM's
claim that it had overpaid the franchise tax. Id. In the present case, although Blue Cross specifically
used the word "resale," Blue Cross's motion does not limit its refund claim to the sale-for-resale
exemption. Rather, the motion asserts that Blue Cross is seeking a refund of sales taxes paid on
purchases made for and transferred to the federal government. Both of the exemptions to which
the Comptroller objected in its plea to the jurisdiction apply to purchases of services sold to the
federal government: section 151.309(1) creates an exemption for "taxable services sold, leased,
rented to, or stored, used, or consumed by" the federal government, see id. § 151.309(1), and
section 151.3111 creates an exemption for services performed on certain exempt tangible personal
property, see id. § 151.3111(a). Thus, considering the tax code's broad definition of "sale," see id.
§ 151.005, both of these exemptions fall within the refund claim asserted in Blue Cross's motion for
rehearing. Accordingly, we hold that Blue Cross's motion for rehearing was sufficiently definite to
identify that its refund claim was based on sales-tax exemptions for purchases made for and resold
to the federal government. (13)

CONCLUSION

 Having overruled the Comptroller's four issues on appeal, we affirm the
district court's judgment.



 __________________________________________

 Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed: March 16, 2011

1. Appellee Health Care Services Corporation is the successor by merger to Blue Cross. For
clarity and consistency, we will use "Blue Cross" to refer to both entities.
2. Because the interests of the Comptroller and Attorney General in the lawsuit and appeal
align, see Tex. Tax Code Ann. § 112.053 (West 2008) (requiring both the Comptroller and the
Attorney General to be named as defendants in tax refund suits under tax code chapter 112), we will
use "Comptroller" as shorthand for the state government parties at both the administrative and
judicial stages of this proceeding.
3. Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395ggg (2000),
commonly known as the Medicare program, is administered by the HHS. See Schweiker v. McClure,
456 U.S. 188, 189 (1982). "Part A" of the Medicare program provides insurance covering the cost of
institutional health services, such as hospitals and nursing homes, for persons in financial need. Id.
(describing Part A). "Part B" provides, for a monthly premium, supplemental benefits for additional
medical needs, such as physician services and laboratory tests, for persons who are disabled or are 65
or older. Id. at 190 (describing Part B). Congress authorized HHS to contract with private insurance
carriers to administer these programs on HHS's behalf. Id.
4. The Federal Employees Health Benefits Act of 1959 established a health insurance program
for federal employees and charged the Office of Personnel Management with negotiating contracts
with qualifying private insurance carriers to offer health insurance to those federal employees who
choose to enroll. See 5 U.S.C. § 8901-12 (2000).
5. The parties also stipulated to an eighth category of purchases Blue Cross made--"taxable
services," including purchases of telephone services, laundry services, landscaping services
and janitorial services. However, Blue Cross ultimately dropped its refund claims related to this
category, and they are not at issue on appeal. 
6. The proceeding originated as two separate lawsuits, but were ultimately consolidated into
a single cause.
7. The district court determined that Blue Cross purchased the remaining categories of
items--i.e., "Taxable Services on Tangible Personal Property" and "Maintenance on Tangible
Personal Property"--for the benefit of the federal government and that the services and maintenance
were performed on the federal government's property. See Tex. Tax Code Ann. §§ 151.309(1)
(exemption for sale to federal government), .3111(a) (exemption for services on certain exempt
personal property) (West 2008). These categories will be discussed in more detail below.
8. In a related argument, the Comptroller asserts that the sale-for-resale exemption does not
cover purchases of tangible personal property used in providing a non-taxable service, relying on
Davis-Kemp Tool Co. v. Bullock, 584 S.W.2d 579 (Tex. Civ. App.--Beaumont 1979, no writ). In
Davis-Kemp, the taxpayer provided non-taxable services to its customers using leased tools that were
returned to the third-party lessor after the project was finished. The Beaumont court held that there
was no resale under these facts and denied sale-for-resale exemption. Id. at 580. In contrast, the
property used in performing the non-taxable services here was transferred to the federal government.
9. "Turnkey" is defined as "provided in a state of readiness for immediate use." Black's Law
Dictionary 1657 (9th ed. 2009).
10. To the extent that the Comptroller is urging that Blue Cross is not a qualified purchaser
because it did not provide resale certificates to its vendors, we note that the Comptroller has
determined that section 151.054(b) does not require a resale certificate as a prerequisite to claiming
the resale exemption. See Tex. Comptroller Public Accounts, Hearing No. 49,141 (Sept. 9, 2008)
(finding that purchaser can claim resale exemption without providing resale certificate);
Tex. Comptroller Public Accounts, Hearing No. 34,937 (Jan. 10, 1997) ("A purchaser . . . is neither
insulated from the tax by issuing a certificate nor subjected to it by failing to issue a certificate. In
the case of a purchaser, the facts, not the certificates, control.").
11. See Tex. Tax Code Ann. § 151.302.
12. Even if we were to assume that the Comptroller has challenged the sufficiency of the
evidence supporting the district court's finding that Blue Cross transferred its rights to the federal
government, that challenge would fail because the record is replete with evidence that the rights to
the leases and the licenses were transferred to the federal government.
13. Blue Cross's motion for rehearing also references Comptroller memoranda that,
from context, appear to be two Comptroller procedures memoranda regarding FAR title-passing
clauses and the supreme court's decision in Day & Zimmermann. Those memoranda, which address
"Day & Zimmermann Type Refunds" and "Day & Zimmermann Refund Procedures," discuss
the exemptions covering services performed on government owned property that are covered by
sections 151.3111 and 151.309.